[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
CORRECTED MEMORANDUM OF DECISION
The court, on its own motion, wishes to correct certain errors in the original Memorandum of Decision dated July 11, 1997. The errors do not affect the court's final decision with respect to this matter; nevertheless, the court is also desirous of making the corrections and has therefore filed this Corrected Memorandum of Decision. The corrections are as follows:
1. Page two, last line, change the year 1984 to 1994.
2. Page three, line 7, change the word "houses" to "hours."
3. Page three, third line from the bottom, change the figure $205,000 to $265,000. CT Page 7409
4. Page 10, line 7, change the age of the youngest child from twenty-one (21) years to nineteen (19) years.
5. Page 13, eighth line from the bottom, change the year "1995" to "1994."
A corrected memorandum of decision is attached hereto.
EDGAR W. BASSICK, III, JUDGE
CORRECTED MEMORANDUM OF DECISION
BASSICK, III, JUDGE
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on November 30, 1980. The parties separated in February, 1994, and have lived separate and apart since that date. There are three children issue of the parties, Thomas Luke Brigante born July 8, 1981, Lauren Brigante born September 19, 1982 and Kelly Brigante born April 5, 1988. The parties have agreed that there be an order for joint legal custody of the minor children, the mother to have residential custody of the children and the father to have broad, liberal and generous visitation, including but not necessarily limited to weekends, vacations and holidays as agreed between the parties.
This action was commenced by the plaintiff on October 4, 1994. While the parties had sought counseling between February and October, 1994, both parties agree that by October there appeared to be no hope of reconciliation. They have filed a written stipulation that their marriage has broken down irretrievably and the court does so find.
This is truly a case in which there is no fault on the part of either of the parties. The parties have drifted apart primarily because the defendant has been spending a lot of time in his business. There has been no suggestion that he is unable to find time with his children. However, whatever time he has had free from his business, he has pursued his hobby interests of hunting and fishing. He has a 40 foot modified sport fisherman that he captains to deep water to fish for tuna and swordfish.
The parties are each 42 years of age and both are in good health. This is the second marriage for the plaintiff. At the CT Page 7410 time of their marriage, the defendant contributed $10,000 to buy out the plaintiff's former husband's share of property owned by the plaintiff in Stamford. This property was sold after the parties moved into their Easton home in 1985 for $160,000, the proceeds of which were invested in the Easton home.
At the time of the marriage, the plaintiff was working in Stamford as a waitress. She had graduated from high school in 1974. After marriage and after the birth of Luke and Lauren, she attended the National Academy of Hair Dressing and worked part time for a year in Mark I in Stamford. In 1994, she took a real estate course and gained her real estate salesperson's license. She worked for Century 21 and in February of this year began work with the Tom Brennan Agency. In 1996, she had gross income from real estate sales of $8,800. Thus far in 1997, she has received $2,500 in gross commissions and expects another commission for approximately $2,500. She has worked as little as five hours per week and as much as twenty hours per week in real estate. As the mother of three children ages 9 to 16 years and living in the area of Easton where they live, she is on the road much of the time driving the children to their activities. However, as the children become older and the oldest child begins to drive, the plaintiff will have more time to devote to her real estate business and should be able to realize more commissions than in the past.
In 1992, the parties purchased a ski home in Ludlow, Vermont for $225,000. The property is subject to a mortgage for $160,000 so that the property has a gross equity value of $65,000. In 1985, the parties purchased property on Ridgeline Road in Easton. The defendant, subsequently, as general contractor built a house upon the vacant property. The house was built with money borrowed from the defendant's parents and the proceeds of sale of the parties' Stamford property. The parties have stipulated a gross equity value for this property of $265,000.
The parties own business property at 569 Main Street in Monroe. The parties have stipulated to a fair market value for this property of $550,000. It is subject to a mortgage of $390,000, a gross equity therefore of $160,000.
During the parties' separation, the defendant purchased a home and 42 acres of land on North Street in Easton. The property is valued at $950,000 and is subject to a mortgage of $950,000. Defendant's financial affidavit reflects a 0 gross equity and CT Page 7411 plaintiff does not contest this representation. Additionally, the plaintiff's financial affidavit lists household furnishings, furniture and jewelry with a fair market value of $75,000. This representation by the plaintiff has not been contested by the defendant.
In January, 1994, one month before the parties' separation, the defendant gave to the plaintiff the sum of $100,000. The balance of these funds (approximately $25,000) is on deposit in an account in the plaintiff's name; $32,650 of this amount having been paid by the plaintiff to her attorney. Since the amount was paid over by the defendant to the plaintiff so close to their separation, the court has considered this sum in arriving at a decision on the split of the assets in this case.
Finally, there is the defendant's business. The parties have stipulated to a value of this business of $2,000,000. The defendant owns 85 per cent of the stock of Land Tech Remedial, Inc., an asset, then, with a value of $1,700,000. In 1987, the defendant formed this corporation. It is an environmental company engaged in petro chemical remediation, whether by land or by sea. The company has 90 employees and offices in New York, Connecticut, Pennsylvania, New Jersey and Maryland. In 1993, the defendant's reported wage income was $192,000, in 1994 $201,000, in 1995 $244, 000 and currently $262,000 or a monthly wage of $21,833.33.
The defendant graduated from Norwalk High School in 1973. After graduation, he attended Norwalk Community College for a semester and Fairfield University for a semester. He then worked as a commercial fisherman operating two lobster boats for two years. In 1974, he worked for his father in a marine based oil spill business called Napco. He worked as a mud shoveler at minimum wage and learned the business. In 1986, his father sold the business, and the defendant stayed on with that corporation for a year and a half. He left that corporation in 1987 to form his own business. As one might expect, the defendant has worked hard to bring Land Tech to the point it is now.
Pendente lite orders were entered on November 22, 1995, providing for $11,000 per month as unallocated alimony and child support effective October 1, 1995. The plaintiff seeks alimony and support of $13,000 per month. The defendant in his claims for relief has requested an order for $8500 per month by way of alimony and support. CT Page 7412
In considering the issues of alimony and support, the court has examined the financial affidavits of both of the parties. While the plaintiff's monthly expenses are reported as $13,758 per month, the court observes certain items appear higher than what might reasonably be expected even at the higher standard of living accustomed for these parties. As has been noted by the plaintiff, also, she has not been able to find the money to pay income taxes for 1995, 2996 and quarterly estimated amounts for 1997. Her financial affidavit shows a liability for these taxes of $41,000. In considering the issue of alimony, the court has considered that the plaintiff should now have more time for her real estate position and be able to generate income on her own. This certainly can be contemplated after the children reach their majority. It should be noted that the factors of § 46b-82
and § 46b-84 of the General Statutes have been considered in arriving at a determination on this issue.
In determining the proper orders in this case, the court must consider the factors set forth in § 46b-81, § 46b-82 and § 46b-84 of the General Statutes together with the provisions of § 46b-62 dealing with attorney's fees. With respect to alimony, support and a division of property, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. CT Page 7413 Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
In the case of Blake v. Blake, 207 Conn. 217 at 230 (1988), our Supreme Court cited with approval the language of O'Neill v.O'Neill, 13 Conn. App. 300 at 311 (1988), in which our Appellate Court stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's contributions to the marriage, including homemaking activities and primary caretaking responsibilities. See also Watson v. Watson, 221 Conn. 698, 712 (1992).
On the issue of division of property, the Appellate Court in the recent case of Siracusa v. Siracusa, 30 Conn. App. 560
(1996), sets forth the statutory criteria as follows:
 General Statutes § 46b-81 (c) sets forth numerous factors that a trial court must consider in assigning the property of the parties whose marriage is to be dissolved by the court. That section mandates that the court consider not only the contribution of each party toward acquisition of the property, but the length of the marriage, the cause of the dissolution and `the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.' General Statutes § 46b-81 (c). The court must consider all of the statutory criteria in determining how to divide the parties' property in a dissolution action. Leo v. Leo, 197 Conn. 1, 5, 495 A.2d 704 (1985). `A trial court, however, need not give each factor equal weight; Kane v. Parry, [24 Conn. App. 307, 313-14, CT Page 7414 588 A.2d 227 (1991)]; or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor.' Savage v. Savage, 25 Conn. App. 693, 701, 596 A.2d 23 (1991). Siracusa v. Siracusa, 30 Conn. App. 560, 566-567 (1996).
Again in Siracusa, the court on page 570 states as follows:
 `The trial court is accorded wide discretion in determining the proper allocation of the assets of the parties.' Graham v. Graham, 25 Conn. App. 41, 47, 592 A.2d 424 (1991). General Statutes § 46b-81
(a) expressly provides that at the time of entering a decree dissolving a marriage, the trial court may assign to either party all or any part of the estate of the other. The court is empowered to pass title or order the sale of real property `when in the judgment of the court it is the proper mode to carry the decree into effect.' Siracusa v. Siracusa, 30 Conn. App. 560, 570 (1996).
As already noted, the court has considered all of the statutory factors of § 46b-81 and § 46b-82 of the General Statutes together with all of the evidence, the parties' financial affidavits, the parties' claims for relief and all of the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria."Weiman v. Weiman, 188 Conn. 232, 234 (1982).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. Neither party is at fault for the breakdown of the marriage. CT Page 7415
The court enters the following orders:
1. A decree of dissolution of the parties' marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. There shall be joint legal custody of the three minor children, the plaintiff to have residential custody and the defendant to have broad, liberal and generous visitation, including but not necessarily limited to weekends, vacations and holidays as agreed between the parties.
3. The defendant shall pay to the plaintiff by way of unallocated alimony and support $10,000 per month ($120,000 per year) for five (5) years. This sum of unallocated alimony and support for this period of five (5) years shall commence on the 1st day of August, 1997 and continue to July 31, 2002 and shall be terminable only upon the death of either party. Said sum shall be payable to the plaintiff regardless of her remarriage or any cohabitation as defined by the provisions of § 46b-86(b) of the General Statutes. During this period, the amount of $10,000 per month may be modified pursuant to the provisions of § 46b-86(a) of the General Statutes.
4. Unallocated alimony and child support shall continue after July 31, 2002 in an amount of $8500 per month, unless the plaintiff has remarried or is cohabitating as defined by the provisions of § 46b-86(b) of the General Statutes. Said amount of $8500 per month may be subject to modification pursuant to the provisions of § 46b-86 (a) of the General Statutes. This second period of unallocated alimony and support shall be for a period of five (5) years unless terminated by the death of either party, the plaintiff's remarriage or the defendant's cohabitation as hereinbefore defined. After said five (5) year period, alimony shall terminate. At the end of said five (5) year period, the youngest child will have reached the age of nineteen (19) years. In the event the plaintiff remarries or cohabits as hereinbefore defined during the second five year period she is entitled to unallocated alimony and support, the parties will negotiate child support and arrive at a figure for child support for the youngest child until she is eighteen years of age or graduates from high school, whichever is later, but no later than April 5, 2007 (the year Kelly reaches the age of CT Page 7416 nineteen (19) years).
5. The defendant shall quit claim all of his right, title and interest in and to the real property at 40 Ridgeline Road in Easton, Connecticut to the plaintiff within thirty (30) days from the date hereof, and the plaintiff shall indemnify and hold harmless the defendant upon the mortgage, real property taxes, insurance and all other expenses associated with the maintenance of the property.
6. The defendant shall quit claim all of his right title and interest in and to the real property known as 9 Farm Ridge Estates in Ludlow, Vermont to the plaintiff within thirty (30) days from the date hereof, and the plaintiff shall indemnify and hold harmless the defendant upon the mortgage, real property taxes, insurance and all other expenses associated with the maintenance of the property.
7. The plaintiff shall quit claim all of her right, title and interest in and to the real property at 569 Main Street, Monroe, Connecticut, to the defendant within thirty (30) days from the date hereof, and the defendant shall indemnify and hold harmless the plaintiff upon the mortgage, real property, taxes, insurance and all other expenses associated with the maintenance of the property.
8. Since it was contemplated that all expenses of the Easton property and the Ludlow, Vermont property would be paid by the plaintiff out of the temporary award of unallocated alimony and support from and after October 1, 1995, there shall be no adjustments upon the conveyance of the defendant's interest in said premises.
9. Since it was understood, likewise, that the defendant or his corporation would pay all expenses of the Monroe property, there shall be no adjustments upon conveyance of the plaintiff's interest in this property.
10. The property at 160 North Street, Easton, Connecticut, shall be wholly the defendant's, free of any claim or demand by the plaintiff.
11. The defendant's boat valued at $75,000 and his motorcycle valued at $15,000 shall be his free of any claim or demand by the plaintiff. CT Page 7417
12. The plaintiff's bank accounts approximating $25,000 shall be wholly hers free of any claim or demand by the defendant.
13. The defendant's bank account at People's Bank noted on his financial affidavit as "Checking-Varies" shall be wholly his free of any claim or demand by the plaintiff.
14. The defendant shall transfer to the plaintiff all of the funds in his IRA/401k accounts approximating $58,313. The plaintiff shall inform the defendant of the account numbers and financial institutions in which she wishes funds to be placed. The plaintiff shall be responsible for any and all tax liabilities associated with said transfer or subsequent withdrawal of said funds.
15. All tangible personal property including any furniture and furnishings at 40 Ridgeline Road in Easton and at 9 Farm Ridge Estates in Ludlow, Vermont, shall be the property of the plaintiff except for the defendant's skis, ski boots and tools in the Vermont house, which shall be his. The snow blower shall be the plaintiff's property. Such property as herein provided shall be the property of the possessor free of any claim or demand by the other party.
16. Each party shall retain her or his motor vehicles in her or his name. The plaintiff, however, shall be wholly responsible on the loan payments for the 1994 Volvo and shall indemnify and hold harmless Land Tech Remedial, Inc. from any claim or demand thereon.
17. The defendant's stock in Land Tech Remedial, Inc. shall be wholly his free of any claim or demand by the plaintiff.
18. As an assignment of estate pursuant to § 46b-81 of the General Statutes, the court orders that the defendant shall pay over to the plaintiff the sum of Five Hundred Thousand ($500,000) Dollars which said sum shall be payable to the plaintiff or her estate if she should die before said payments have been fully paid and which shall be paid regardless of whether the plaintiff remarries:
 a. One Hundred Thousand ($100,000) Dollars on or before December 31, 1997; CT Page 7418
 b. One Hundred Thousand ($100,000) Dollars on or before December 31, 1998;
 c. One Hundred Thousand ($100,000) Dollars on or before December 31, 1999;
 d. One Hundred Thousand ($100, 000) Dollars on or before December 31, 2000.
 The court has considered the defendant's transfer of One Hundred Thousand ($100,000) Dollars in January, 1994 to have been the fifth One Hundred Thousand ($100,000) Dollar payment.
 Said further payments shall be non-modifiable and are assignments of estate pursuant to § 46b-81 of the General Statutes and shall be a charge against the defendant's estate if he should predecease before all such payments have been made.
19. The liabilities listed in the plaintiff's financial affidavit shall be wholly hers, and she shall indemnify and hold harmless the defendant from any claim or demand thereon.
20. The liabilities listed in the defendant's financial affidavit shall be wholly his, and he shall indemnify and hold harmless the plaintiff from any claim or demand thereon.
21. The plaintiff in her financial affidavit reports a life insurance policy with Prudential and states that specific information is in defendant's possession. Should there be such a policy, the court orders that the plaintiff shall own such policy free and clear of any claim by the defendant.
22. The defendant shall maintain term life insurance for the benefit of the plaintiff in an amount of $500,000 as long as he is obligated to pay alimony. He shall also maintain $500,000 in life insurance for the benefit of the minor children as long as he is obligated to pay support.
23. The defendant shall maintain health insurance for the benefit of the three minor children as long as it is available through his employment and as long as each child is eligible under the plan. The parties shall share equally all unreimbursed medical and dental expenses. The plaintiff CT Page 7419 shall have the benefits of COBRA at her expense.
24. Each party shall pay her or his own attorney's fees.
Orders shall enter in accordance with the foregoing. Plaintiff's counsel shall prepare the judgment file.
EDGAR W . BASSICK, III, JUDGE