## SUSAN SIRACUSA *v.* DANIEL SIRACUSA
### (10824)

DUPONT, C. J., FOTI and HEIMAN, Js.

Argued January 8—decision released March 9, 1993

*Christina M. Storm,* with whom was *Thomas A Rouse,* for the appellant (defendant).

*Lloyd Frauenglass,* with whom, on the brief, was *Candace V. Bath,* for the appellee (plaintiff).

FOTI, J. In this dissolution action, the defendant appeals from the judgment rendered, claiming that the trial court improperly (1) determined periodic financial orders and a property distribution schedule, (2) awarded time-limited alimony,[1] (3) distributed the marital estate, (4) determined the value of the family business, and (5) exercised excessively broad discretion over financial and commercial business issues not involving custody or marital matters. We affirm the judgment of the trial court.

The following facts are pertinent to this appeal. The parties met while attending college. Following his graduation in 1979, the defendant established a moving business called "Dan's Moving." The plaintiff left college in the spring of 1980 without graduating. In her spare time, she assisted the defendant in the development of his business. After their marriage on October 16, 1982, the plaintiff began devoting all of her time to the moving business, serving as operations manager, hiring and firing employees, and working fifty to sixty hours per week. At the plaintiff's urging, the business was incorporated in 1984 as Siracusa Moving and Storage Company, Inc. The plaintiff received 40 percent of the stock, and the defendant received the remaining 60 percent. About this time, the defendant's brother began working for the company, and the plaintiff devoted substantially all of her time to caring for the parties' residence. She also obtained her real estate agent's license which, at the time, she felt would be of some assistance to the defendant in developing the moving business. She worked as a real estate agent for a short while. In 1985, the parties purchased a house,

[1] The defendant has failed to brief this claim, and we therefore consider it abandoned. *Pomazi* v. *Conservation Commission*, 220 Conn. 476, 477–78 n.3, 600 A.2d 320 (1991); *Esaw* v. *Friedman*, 217 Conn. 553, 554 n.1, 586 A.2d 1164 (1991); *State* v. *Walzer*, 208 Conn. 420, 423 n.2, 545 A.2d 559 (1988).

and in May, 1986, their daughter was born. During this period, the defendant devoted nearly all of his time to company business, leaving little or no time for social events or vacations. The plaintiff supported the defendant's efforts and goals, and the business prospered.

In the spring of 1988, the marriage began to deteriorate. In September, 1988, divorce proceedings were initiated by the plaintiff, who claimed that the marriage had broken down irretrievably with no hope of reconciliation. On October 2, 1991, the trial court rendered judgment dissolving the marriage. In making its orders as to how the marital estate should be divided, the trial court concluded "that fault on the part of neither party is a factor to be considered."

The court found that the value of the family business at the time of the marriage was $23,408 and at the time of the dissolution was $820,000. A jointly owned condominium was valued at $117,500, with a mortgage of $68,500. The marital residence was valued at $175,000, with a mortgage of $114,000. The gross marital estate was valued at $973,604.

The court awarded the plaintiff 53 percent of the marital estate and the defendant 47 percent. The court deducted from the gross marital estate the value of the business on the date of the parties' marriage ($23,408) and established the plaintiff's 53 percent interest at $503,604 and the defendant's 47 percent interest at $446,592. The court allocated property accordingly. The plaintiff was granted custody of the minor child.

The defendant was ordered to pay the plaintiff $319 a week as child support, by agreement, and $300 a week as alimony. The alimony was to be paid for a two year period. As part of its allocation of property, the trial court ordered the plaintiff to convey her interest in the family business to the defendant, who in turn would execute and deliver to the plaintiff a $428,525 promis-

sory note, at 6 percent interest, secured by a mortgage on two of his properties. The court established a seven year payment schedule that required the defendant to make a $25,000 lump sum payment to the plaintiff within two months of the judgment, and monthly payments of $2500 thereafter, with a balloon payment of the balance due on October 2, 1998.

The defendant first claims that the trial court abused its discretion in ordering weekly payments of alimony and child support that, combined with his periodic payment of the property settlement,[2] exceeded his weekly income. The defendant's financial affidavit disclosed his weekly income as $1066. He argues, therefore, that there were no findings to support the court's order of weekly payments, which he claims "grossly exceeded" his earnings.[3]

---

[2] We note that while the defendant has computed this total weekly payment as $1196.36, the proper figure is $1195.92.

[3] In a motion for articulation, the defendant asked the trial court to state whether it specifically "found" that his gross weekly earnings were $1066. Although the trial court denied the motion, during the hearing on the motion the following colloquy occurred between the trial court and the defendant's counsel:

"The Court:  . . .  Number five, I'm a little confused about what you're looking for.

"Ms. Storm: I wasn't clear by the language you mentioned. On the affidavit he grossed under $1066, and then later on in your decision you said, in addition to the findings—I simply want to delay a finding. It was found that his gross weekly earnings were $1066.

"The Court: His financial affidavit says that's what it is.

"Ms. Storm: I should say, sometimes affidavits can say one thing and—

"The Court: Well, let me make a note that plaintiff's CPA said that's what it was.

"Ms. Storm: My only question is whether you found—

"The Court: My decision mentions it. I don't know whether I said, I specifically find—I took his word that it was true. There's no reason that it isn't.

"Ms. Storm: All right."

The defendant did file a motion for review with this court. We granted the motion but denied the requested relief because the basis of the trial court's decision was sufficiently illuminated, requiring no further articulation. See *State* v. *Wilson,* 199 Conn. 417, 513 A.2d 620 (1986).

The record shows that the trial court had before it both the financial affidavit disclosing the $1066 weekly income and other evidence indicating that the defendant's income was $75,000 a year. (At the dissolution proceeding, the defendant's counsel indicated to the court that the defendant had based the agreed upon amount of weekly child support on the existing child support guidelines, which recommend $319 based on a $75,000 annual income.) The court was also aware that the defendant had been paying $892 per week for the plaintiff and the minor child during the pendency of the action. The combined weekly alimony and child support payment finally ordered by the court in the judgment ($619) was therefore substantially less than the defendant had been paying prior to the order. As the plaintiff correctly points out, the seven year payout of the property settlement was ordered as a means of spreading out over time the payment of her percentage of the marital estate. The court apparently rendered this order after considering argument made by the defendant's counsel to the effect that there was insufficient liquidity in the family business to enable the defendant to pay the plaintiff in a lump sum. This periodic payment is separate and distinct from the $619 weekly alimony and child support ordered by the court. There is no question that the trial court could have ordered a sale of the business to facilitate division of the marital assets. See General Statutes § 46b-82, footnote 5, infra.

While a trial court must consider a number of factors in awarding alimony and distributing the assets of the parties, and may exercise broad discretion in that consideration; *Miller* v. *Miller,* 22 Conn. App. 310, 314, 577 A.2d 297 (1990); it need not recite each factor in its decision, and it is sufficient that the memorandum of decision "at least reflect a proper consideration and weighing of the factors set forth in the statute." *Koper*

v. *Koper,* 17 Conn. App. 480, 484, 553 A.2d 1162 (1989). The record is clear that, in establishing these orders and structuring a seven year payment schedule, the court considered the statutory criteria enumerated under General Statutes §§ 46b-81[4] and 46b-82.[5]

---

[4] General Statutes § 46b-81 provides: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect.

"(b) A conveyance made pursuant to the decree shall vest title in the purchaser, and shall bind all persons entitled to life estates and remainder interests in the same manner as a sale ordered by the court pursuant to the provisions of section 52-500. When the decree is recorded on the land records in the town where the real property is situated, it shall effect the transfer of the title of such real property as if it were a deed of the party or parties.

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

[5] General Statutes § 46b-82 provides in pertinent part: "At the time of entering the decree, *the superior court may order either of the parties to pay alimony to the other, in addition to . . . an award pursuant to section 46b-81.* The order may direct that security be given therefor on such terms as the court may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ." (Emphasis added.)

The court looked specifically at the occupations, skills and employability of the parties. It found that the plaintiff, with three years of college education, had worked as a waitress, had obtained her real estate agent's license, and had some experience in the moving business. The defendant, a college graduate, is the chief executive officer of a moving and storage company he established twelve years ago. The trial court found that "[f]rom the nature of the occupations and skills of the parties . . . [the] defendant has a far greater opportunity than does the plaintiff for the future acquisition of capital assets or income." It is a "well recognized family law principle that, in a marital dissolution proceeding, the court may base financial awards on the earning capacity rather than the actual earned income of the parties." *Carey* v. *Carey,* 29 Conn. App. 436, 440, 615 A.2d 516 (1992).

We will not disturb a trial court order unless there has been an abuse of discretion or unless the finding of the trial court has no reasonable basis in the facts. *Brash* v. *Brash,* 20 Conn. App. 609, 612, 569 A.2d 44 (1990). The orders here were reasonably based on the facts; we conclude that there was no abuse of discretion.

The defendant next claims that there was no reasonable basis to support the court's award of 53 percent of the marital estate to the plaintiff. Since the record establishes that he contributed the "lion's share" to acquisition of the marital estate, and that no fault was assessed to either party as cause of the breakdown, he contends that this award was unsupported by the record in view of the relatively short length of the marriage. We disagree.

General Statutes § 46b-81 (c) sets forth numerous factors that a trial court must consider in assigning the property of the parties whose marriage is to be dissolved by the court. That section mandates that the

court consider not only the contribution of each party toward acquisition of the property, but the length of the marriage, the cause of the dissolution and "the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income." General Statutes § 46b-81 (c). The court must consider *all* of the statutory criteria in determining how to divide the parties' property in a dissolution action. *Leo* v. *Leo,* 197 Conn. 1, 5, 495 A.2d 704 (1985). "A trial court, however, need not give each factor equal weight; *Kane* v. *Parry,* [24 Conn. App. 307, 313–14, 588 A.2d 227 (1991)]; or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor." *Savage* v. *Savage,* 25 Conn. App. 693, 701, 596 A.2d 23 (1991). An award of a larger percent of the total marital assets to one party is not a per se abuse of discretion. *Sweet* v. *Sweet,* 190 Conn. 657, 664, 462 A.2d 1031 (1983); *Damon* v. *Damon,* 23 Conn. App. 111, 113, 579 A.2d 124 (1990). We point out that in determining the "contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates"; General Statutes § 46b-81 (c); the trial court must "accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets." *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 311, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988).

"A fundamental principle in dissolution actions is that a trial court may exercise broad discretion . . . as long as it considers all relevant statutory criteria." (Internal quotation marks omitted.) Id., 306. "On appeal, the defendant bears the burden of proving to this court that

the trial court did not consider the proper criteria
. . . ." *Mihalyak* v. *Mihalyak,* 11 Conn. App. 610, 620,
529 A.2d 213 (1987).

The record shows clearly that the court considered
all of the relevant statutory factors. The trial court's
assignment of the property had a reasonable basis in
the facts and thus will not be disturbed. *Krause* v.
*Krause,* 189 Conn. 570, 572, 456 A.2d 1204 (1983). This
order is consonant with the court's broad discretion.
See *Rostain* v. *Rostain,* 214 Conn. 713, 573 A.2d 710
(1990); *Emanuelson* v. *Emanuelson,* 26 Conn. App. 527,
602 A.2d 609 (1992).

The defendant next claims that in ascertaining the
value of the gross marital estate, the trial court improp-
erly refused his request that a minority discount be
applied to the plaintiff's 40 percent interest in the
family business.[6] Before we begin our analysis of this
claim, we point out that valuation is a factual determi-
nation. "In assessing the value of . . . property . . .
the trier arrives at his own conclusions by weighing the
opinions of the appraisers, the claims of the parties,
and his own general knowledge of the elements going
to establish value, and then employs the most appro-
priate method of determining valuation. . . . The trial
court has the right to accept so much of the testimony
of the experts and the recognized appraisal methods
which they employed as he finds applicable; his deter-
mination is reviewable only if he misapplies, overlooks,
or gives a wrong or improper effect to any test or con-
sideration which it was his duty to regard." (Citations
omitted; internal quotation marks omitted.) *Turgeon*
v. *Turgeon,* 190 Conn. 269, 274, 460 A.2d 1260 (1983).

---

[6] The defendant raised this minority discount issue in his motions for artic-
ulation and rectification, both of which were denied by the court. We granted
the defendant's motion for review of the trial court's denials, but denied
his request for relief.

In determining whether the trial court reasonably could have concluded as it did on the basis of the evidence before it, we will give every reasonable presumption in favor of the correctness of the court's action. *Gallo* v. *Gallo,* 184 Conn. 36, 44–45, 440 A.2d 782 (1981).

The trial court found that the family moving and storage business is a closed corporation "with the parties as sole stockholders." To establish its fair market value, the trial court reviewed the opinions of two certified public accountants who testified as experts, one for the plaintiff and one for the defendant. After reviewing all of the evidence, the court concluded that the "capitalization of earnings" method of valuation was the proper one and rejected the "capitalization of excess earnings" method. This conclusion was well within the trial court's discretion. *Turgeon* v. *Turgeon,* supra.

In determining the value of the plaintiff's interest in the corporation, the court chose *not* to discount her 40 percent minority interest, after weighing the defendant's request that a minority discount be applied.[7] At the hearing on the defendant's motions for articulation and rectification, the trial court stated that it had considered whether to apply such a discount, but had determined that a discount was not appropriate in view of the facts of the case. The trial court specifically distinguished this case, in which the parties are the company's sole shareholders, from those cases in which one spouse held a minority shareholder interest in the company and the remaining interests were held by third parties. In the latter cases, a discount had been applied in valuing the spouse's minority interest.

---

[7] A so-called "minority discount" involves first establishing the full market value of a minority interest and then discounting that value by an appropriate percentage to account for such factors as nonmarketability of the shares and the minority interest holder's inability to control management.

We agree with the trial court's determination that the value of a minority shareholder's interest may, in the court's discretion, be discounted by an appropriate percentage when the business is not controlled by either or both of the marital partners and would not be controlled by one of the partners even if that partner were awarded all of the couple's shares. We find no abuse of discretion, however, in the trial court's refusal to apply a minority discount here, where the sole shareholders were husband and wife and the defendant was awarded 100 percent of the corporation's stock. Because the trial court's determination is not clearly erroneous, it must stand. Id., 275–76.

The defendant's last claim is that we should not give "wide discretion" to the trial court in our review of the commercial valuation issues he has raised. He argues that wide discretion should be accorded only to the award and division of property, that is, "the bottom-line allocation of assets and/or obligations." The defendant urges us to narrow the "broad discretion" ordinarily given to the trial court because, "where issues involving valuation arise in a domestic relations setting, the discretionary leeway of the court should not be broadened simply because the parties are husband and wife." We disagree.

"The trial court is accorded wide discretion in determining the proper allocation of the assets of the parties." *Graham* v. *Graham,* 25 Conn. App. 41, 47, 592 A.2d 424 (1991). General Statutes § 46b-81 (a) expressly provides that at the time of entering a decree dissolving a marriage, the trial court may assign to either party all or any part of the estate of the other. The court is empowered to pass title or order the sale of real property "when in the judgment of the court it is the proper mode to carry the decree into effect." In neither § 46b-81 (a) nor § 46b-81 (c), which sets out the criteria

that the trial court must apply in determining a proper distribution of the parties' assets, did our legislature establish special rules for fixing the value of the commercial assets of a marital estate. The question of value is one of many factual determinations committed to the trial court in a dissolution proceeding. *Turgeon* v. *Turgeon,* supra. We do not overturn those findings unless they are clearly erroneous. "That is the standard and scope of this court's judicial review of [factual] decisions of the trial court." *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 222, 435 A.2d 24 (1980). We cannot conclude that a different standard of review is warranted in cases where fixing the amount of the gross marital estate requires the valuation of a commercial business as opposed to other assets.

The judgment is affirmed.

In this opinion the other judges concurred.