[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties married on October 6, 1978 in Fairfield, Connecticut. It is the second marriage for each and each of the parties had a child of her or his first marriage. In the plaintiff's case, she had a daughter, Nicole, who is now twenty-seven years of age and who was adopted by the defendant. The defendant has a son, Michael, who is now twenty-five years of age.
There are two children issue of the parties, Alexis, born February 25, 1980, and Aaron, born March 27, 1981, thus 17 and 16 years of age. Alexis is now a junior at Fairfield High School and Aaron a sophomore at Fairfield Prep.
The parties stipulated that the exhibits introduced at the pendente lite hearing shall be exhibits in this proceeding. Even with agreement on the introduction of exhibits, the dissolution hearing lasted eighteen days. There have been two hundred and CT Page 10713 seventy-seven exhibits (one hundred thirty-two offered by the plaintiff and one hundred fifty-five offered by the defendant). The parties have left no stone unturned in their presentation.
Trial of this matter commenced on June 3, 1997 and concluded on August 20, although interrupted by other trials during that period of time. In the fall of 1996, hearings on pendente lite motions consumed twelve days of trial time so that this case has consumed thirty days of trial time in all. The case has become a "cause celeb" driven in large measure by the pro se defendant.
The parties have fought bitterly during these proceedings. In excess of fifty motions have been filed to date and the parties have produced a volume of financial information. Some of this has been necessary because of the plaintiff's four wholly owned Subchapter S corporations. In addition, the plaintiff sustained a fire loss in her home on January 9, 1997, resulting in a recovery of more than one million ($1,000,000) dollars in insurance proceeds for which the defendant sought an accounting. The plaintiff received the limit of her fire policy and sustained an additional $200,000 loss for which there was no recovery.
This action was commenced in September, 1995. The plaintiff and the two minor children presently reside at 19 Gorham Avenue in Westport, Connecticut. This is a new residence for them, the former family home at 160 Farmstead Hill Road in Fairfield having been substantially damaged by the fire.
The defendant resides in an apartment owned by the plaintiff at 70 Anderson Lane in Southport. It ought to be noted that the defendant's residency commenced pursuant to a lease executed by himself to himself without authorization by the plaintiff whose corporation is the sole owner of the property and then subsequently by order of the undersigned in its Memorandum of Decision dated October 28, 1996.
The plaintiff, until February 12, 1996, was employed as Administrator and President of Southport Manor Convalescent Home, owned by her father, Albert A. Garofalo, a Fairfield attorney. She was terminated by her father for failing to advance funds from Southport Manor as he had requested. She had been so employed for twenty-four years with an annual salary ranging from $155,000 to $250,000. While the defendant has claimed that the termination was contrived to avoid paying him alimony, the undersigned has previously found to the contrary and has found CT Page 10714 that there is a definite rift between father and daughter. Mr. Garofalo testified in this proceeding and that rift unfortunately continues.
Since two of the plaintiff's corporations are virtually dependent upon Southport Manor for their business and since this business has been almost totally terminated, the plaintiff has experienced loss of business and a loss of income besides just the absence of her salary. These two corporations, because of the loss of business, have also lost value resulting in a diminution in the plaintiff's net worth. The defendant has been unable to recognize the plaintiff's desperate cash flow position. She has been forced to borrow from her corporations and to use the funds recovered for the fire loss for necessary living expenses. She has had to juggle borrowings against her credit cards using access checks on various accounts to take advantage of the lowest introductory interest rates.
The health of both parties is fine. Plaintiff is 49 years of age and the defendant is 48 years of age. The plaintiff is seeking employment as an administrator of a health care facility both in this country and abroad. The defendant had also been employed at Southport Manor until his termination in January, 1996. He was employed by Southport Manor in 1980 as the Director of Data Processing and remained in that position until his termination in January, 1996. At the time of the parties' marriage, he was employed at Cheeseborough Ponds as a Project Leader and Systems Analyst. (See plaintiff's exhibit GG.) On January 13, 1997, the defendant became again employed as a consultant on data processing by Keane Associates of Darien, Connecticut. His gross annual salary is $55,000. He reports a net wage of $800.00 weekly. The plaintiff reports weekly income of $322.00.
While custody of the minor children was an issue prior to the pendente lite hearing, the recommendations of the Family Relations counselors at the time of mediation on October 23rd, 1996, was as follows:
 "Given the children's ages and the presence of counsel for them, a referral to the Family Services unit for custody evaluation does not appear warranted. The children have both voiced their preference to live with their mother." CT Page 10715
As noted at the outset of this memorandum, the children are 17 1/2 and 16 1/2 and have both expressed their preference to live with their mother. They have been represented by counsel and their counsel has filed a report dated November 7, 1996, which bears docket entry number 159.00. In that report, counsel states as follows:
 "Alexis Toth and Aaron Toth are capable of expressing an intelligent preference with respect to custody and visitation and both children have expressed a preference to remain in the physical custody of the plaintiff-mother. The boys appear relaxed and comfortable in their father's company and have indicated to me their desire to spend time with their father on a flexible, liberal schedule. They told me that the visitation arrangement they would prefer is one whereby they feel free to call their father to make their own arrangements to spend time with him."
Indeed, they have been spending time with their father throughout these proceedings as they chose. Neither of the children have felt constrained by their mother from spending time with their father. Counsel for the children reported the children's position on the first day of trial and was excused from further participation in these proceedings pursuant to §46b-54 (c) of the General Statutes. See Newman v. Newman,35 Conn. App. 449, 451 (1995).
Section 46b-56 (b) of the General Statutes provides, in part, as follows:
 "In making or modifying any order with respect to custody or visitation, the court shall (1) be guided by the best interests of the child, giving consideration to the wishes of the child if the child is of sufficient age and capable of forming an intelligent preference,. . . ."
The court finds that each of the children are of sufficient age and capable of forming an intelligent preference, and the court shall be guided by their expressed preference as reported by their counsel and by their mother.
From the date of the parties' separation, they have not CT Page 10716 communicated. The children have communicated directly with their father regarding visitation. The plaintiff has been so emotionally upset since learning of the defendant's conduct with Nicole, the parties' daughter, that there has been no communication. This proceeding has been bitterly contested. The court finds that it would be impossible for the parties to communicate on important issues in the children's best interests. See Emerick v. Emerick, 5 Conn. App. 649 (1985).
Section 46b-56a of the General Statutes provides, in part, as follows:
 "For the purposes of this section, `joint custody' means an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents." (Emphasis supplied.)
The court finds that the parties would not be able to accomplish "joint decision-making" as provided in the statute. Sole custody of the minor children should, therefore, be with the plaintiff.
The marriage of the parties has broken down irretrievably. The plaintiff has testified that early in the marriage the defendant began bickering, yelling, shouting and hitting Nicole, who was eight years of age at the time. The plaintiff testified that he became verbally abusive and that she had to call the defendant's father to come over to stop it. She testified that he threatened to run away with the children and told her he married her for her money. She testified further that he was violent and threatened to kill her on numerous occasions, that he slapped her in the face saying: "woman, know your place" and struck her in the face on another occasion while they were together in the car. All of these claims were denied by the defendant.
The defendant complained of the plaintiff's drinking, of her smoking and of her behavior on a couple of occasions with a fellow member of the Young Presidents Organization. He also complained of her abusiveness on drinking. All of these claims were denied by the plaintiff.
The event causing the final breakup occurred on January 3, CT Page 10717 1996, was when the plaintiff learned of the defendant's conduct with their daughter Nicole from the time she was nine until she was fifteen years of age. The plaintiff testified that when the defendant was confronted by her statement that you touched my daughter, his response was, "I know, I know, I love her too. How do you think it makes me feel?" Nicole has brought a civil action against the defendant in which she alleges a sexual battery. The court has taken judicial notice of the action entitled Nicole M.Toth v. Michael E. Toth, docket number 333447 pending in the Judicial District of Fairfield at Bridgeport. This action was commenced on May 2, 1996.
On September 15, 1995, the parties entered into a separation agreement. This had been prepared by plaintiff's then counsel. The agreement provided for the plaintiff to have custody of the two minor children, Alexis and Aaron, provided for no alimony to either of the parties and provided for each of the parties to retain ownership of all property then owned by each (see plaintiff's exhibit PP).
The defendant has testified that he did not know what he was signing, that he signed this document under duress and that it was his understandings that the document was "really not going to mean anything between them." He testified further that it was his position the marriage had not broken down irretrievably on September 15, but rather in January, 1996, when the plaintiff's deposition was taken.
Section 46b-66 of the General Statutes provides for the submission of such an agreement to the court. If the court finds such an agreement to be fair and equitable, it shall incorporate the provisions of the agreement into the court's order or decree. However, if it finds the agreement is not fair and equitable, it shall make such orders as to finances and custody "as the circumstances require." The court does not find the agreement to be fair and equitable under all the circumstances and, therefore, shall not enter orders in accordance therewith.
Having determined that the separation agreement is not fair and equitable, the court must now consider the provisions of § 46b-62, § 46b-81, § 46b-82, § 46b-84 and §46b-215b of the General Statutes; that is, alimony, division of property, support for the minor children and attorney's fees. CT Page 10718
The defendant has a multitude of talents. He has done accounting, payroll and prepared tax returns. He has handled purchasing for the plaintiff's businesses and has experience in management positions. He is a licensed real estate broker and has his own agency, Innovative Real Estate, Inc. He holds a license as a lead inspector, has advertised that business in the yellow pages, has prepared a pamphlet and calling cards for distribution and has purchased a lead spectrum machine at a cost of close to $10,000. He has held a food service license in the past, has worked as a general contractor in building the family home, has rehabed properties and can perform plumbing, electrical, carpentry, painting, roofing and flooring. He is a very innovative and clever individual. His current resume' is in evidence (see plaintiff's exhibit GG).
The court finds that the defendant is perfectly capable of supporting himself and contributing to the support of the children.
As previously noted, the plaintiff has been employed at Southport Manor as President and Administrator. She presently enjoys income from her corporations and rental properties. As reported in her financial affidavit, this income presently amounts to $764 per week except after taxes her net weekly income is $322. She seeks no alimony in this proceeding and the court finds that she is capable of supporting herself.
With respect to alimony, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the CT Page 10719 factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
In considering the issue of support for the minor children, the court has examined the financial affidavits of both of the parties and has considered the factors of § 46b-84 (c) which provides as follows:
 In determining whether a child is in need of maintenance and, if in need, the respective abilities of the parents to provide such maintenance and the amount thereof, the court shall consider the age, health, station, occupation, earning capacity, amount and sources of income, estate, vocational skills and employability of each of the parents, and the age, health, station, occupation, educational status and expectation, amount and sources of income, vocational skills, employability, estate and needs of the child.
The court finds that Alexis and Aaron are in need of maintenance. Aaron did work during the summer at Mercurio's in Fairfield for his own spending money. While § 46b-84 (c) sets forth the factors to be considered, the amount of support is also controlled by the provisions of 46b-215b which provides, in part, as follows:
 (a) The child support . . . guidelines . . . shall be considered in all determinations of child support amounts . . . within the state. In all such determinations, there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support . . . to be ordered. . . .
The presumption that the guideline amount is the amount of support that should be ordered has not been rebutted by any evidence presented by either party. A Child Support Guideline Worksheet has been submitted by plaintiff's counsel and the CT Page 10720 proposed support in accordance with the guidelines is $240.00 per week. Plaintiff has requested a retroactive order to the date of the filing of their motion. This request, however, is denied and the order for support shall be effective from the date hereof.
Remaining, then, for consideration is the issue of property assignment pursuant to the provisions of § 46b-81 of the General Statutes. Our appellate court in the recent case ofSiracusa v. Siracusa, 30 Conn. App. 560 (1996), sets forth the statutory criteria as follows:
 General Statutes § 46b-81 (c) sets forth numerous factors that a trial court must consider in assigning the property of the parties whose marriage is to be dissolved by the court. That section mandates that the court consider not only the contribution of each party toward acquisition of the property, but the length of the marriage, the cause of the dissolution and `the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.' General Statutes § 46b-81 (c). The court must consider all of the statutory criteria in determining how to divide the parties' property in a dissolution action. Leo v. Leo, 197 Conn. 1, 5, 495 A.2d 704 (1985). `A trial court, however, need not give each factor equal weight; Kane v. Parry, [24 Conn. App. 307, 313-14, 588 A.2d 227 (1991)]; or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor.' Savage v. Savage, 25 Conn. App. 693, 701, 596 A.2d 23 (1991). Siracusa v. Siracusa, 30 Conn. App. 560, 566-567 (1996).
Again in Siracusa, the appellate court on page 570 states as follows:
 `The trial court is accorded wide discretion in determining the proper allocation of the assets of the parties.' Graham v. Graham, 25 Conn. App. 41, 47, 592 A.2d 424 (1991). General Statutes § 46b-81 (a) expressly provides that at the time of CT Page 10721 entering a decree dissolving a marriage, the trial court may assign to either party all or any part of the estate of the other. The court is empowered to pass title or order the sale of real property `when in the judgment of the court it is the proper mode to carry the decree into effect.' Siracusa v. Siracusa, 30 Conn. App. 560, 570 (1996).
The defendant has presented his claims for relief as if he should be entitled to one half of all income received by the plaintiff during the course of this divorce. He claims, further, to "LOST INCOME" resulting from the plaintiff's actions. (See paragraph 14 of defendant's Claims for Relief.) He claims also that the plaintiff has "hidden income" in her corporations by reason of the fact that personal bills were paid through the companies.
Such personal expenses as were paid through the corporations were treated as loans to the shareholder and do not constitute income to the plaintiff. The plaintiff's accountant, David Purdy, testified for several days in this proceeding and satisfied the court that there was no improper reporting of income or expenses.
The defendant in his claims for relief has ignored the fact that all of the properties for which he claims income during the pendency of this action and lost income of the corporations were wholly owned by the plaintiff. All of the properties other than the property in Puerto Rico, the condominiums in Vermont, which have now been sold, and the Farmstead Hill Road property in Fairfield and the Gorham Avenue property in Westport were either inherited by her during the marriage or purchased by her from her father.
While the defendant claims he was instrumental in running the plaintiff's companies and took an active role in the operation of Southport Manor, the court finds that not only did the defendant not run the plaintiff's companies, but he was in many ways disruptive and interfered with the companies' operations. During most of the period of the marriage, the defendant was earning Fifty Thousand ($50,000) Dollars per year by way of salary as compared to the plaintiff's salary up to Two Hundred Fifty Thousand ($250,000) Dollars per year. To demonstrate the absurdity of the defendant's claims, one need look only at request number 23 of his claims for relief wherein he seeks $794,418.74 from the plaintiff as itemized on Schedule B. He CT Page 10722 claims interest on this amount of $151.00 per day.
The court does find, however, that the defendant has played a role in the forming of the plaintiff's corporations and in the "acquisition, preservation or appreciation in value" of the plaintiff's estate. This contribution has not been to the extent that he has argued or claimed in his claims for relief. Certainly, he contributed his time and ideas in the building of 160 Farmstead Hill Road and in the acquisition of Mountain Reach 20B and Mountain Reach 30C, the two Stratton Mountain condominiums. The purchase of each was accomplished by leveraging other properties of the plaintiff. While the plaintiff claimed that the financing of her other properties to secure these properties ultimately caused her financial difficulties, this would not have happened had not her salary been terminated so abruptly.
In reaching a decision on the division of property pursuant to § 46b-81, the court also considered all of the factors of that statutory section, together with all of the exhibits and all of the evidence together with the fact that the plaintiff transferred to the defendant a 1992 Mercedes S.L. early on in these proceedings.
The plaintiff has made some claims for relief which the court shall not grant and which shall not be recited at the end of this Memorandum. So that the plaintiff does not think that those claims have been overlooked, the court shall recite those requests at this point.
Claim for relief number 7 is denied since the court considers this a part of its order for support.
Claim for relief number 11 is denied. The court in its Memorandum of Decision dated October 28, 1996, had ordered that the plaintiff was to permit the defendant to occupy an apartment at 70 Anderson Lane in Southport pendente lite, free of rent, heat and utilities except telephone.
Claim for relief number 20 is denied. While much of Mr. Purdy's time was necessitated because of the defendant's efforts to find alleged "hidden income", the court does not find such efforts on defendant's part to have been anything but proper. Mr. Purdy's expenses must, therefore, be the plaintiff's responsibility. CT Page 10723
Claim for relief number 22 is denied. The plaintiff's medical insurance shall be at her own cost and expense.
Claim for relief number 29 is denied. Mr. Darren Toth was subpoenaed by the defendant. The defendant shall bear the expenses for David Toth in accordance with the statutes as with any other subpoenaed witness. If the plaintiff chooses to reimburse Mr. David Toth some amount, that, of course, is up to her.
Claim for relief number 26 is denied. It appears from the evidence that Anne Patten was neither the plaintiff's maiden name nor her former married name. Pursuant to § 46b-63, this is the limit of the court's authorization in a dissolution proceeding. See Mayor v. Mayor, 17 Conn. App. 627 (1989). The plaintiff's former married name was Anne Patten Meyer and this name may be restored to her.
In claim for relief number 18, the plaintiff seeks an order that the defendant transfer the bond from the Patterson Club and his membership to her. In 1982, the defendant applied for membership in the Patterson Club. The plaintiff was approached by Emil Garofalo, her uncle, and two other members to apply. In 1984 the Toth family became family members. This was a dining and social membership. Thereafter, a bond was purchased for $12,500 for a full membership in the defendant's name. This was in the defendant's name because the club did not allow female members prior to 1994. The bond was purchased with plaintiff's funds. Since the parties' separation, the defendant has kept up a single full privilege membership. From time to time, he has entertained his sons at the club. Plaintiff has applied for a dining and social membership in her name and has also paid for a dining and social membership in Nicole's name.
The defendant has testified under oath that this membership is not his and that it was a family membership. (See plaintiff's exhibit CC-1, page 5 and exhibit FF-1, page 31.) In testimony before Magistrate Miller, the defendant testified further: "It is her lifestyle that I moved into. It is not my lifestyle." (Transcript exhibit FF-1, pg. 36, May 30, 1989.)
The transcript of proceedings before Magistrate Miller was in the action entitled JoAnn Toth v. Michael E. Toth, docket number FA77 0167832 in the Superior Court for Fairfield County at CT Page 10724 Bridgeport. The court has taken judicial notice of that file. The plaintiff in that proceeding, the defendant's first wife, was seeking a modification of support for the defendant's child, Michael, previously mentioned in this memorandum as the defendant's son of his first marriage. The court finds further that the membership in the Patterson Club is the plaintiff's membership. In addition, the court finds that the entire relationship between the parties is such that they cannot continue as members in the same country club.
In addition to the findings already set forth above, the court finds further as follows:
1. There is the requisite jurisdiction.
2. The allegations of the Amended Complaint dated March 16, 1995 have been proved and are true.
3. The marriage of the parties has broken down irretrievably.
4. The defendant is at fault for the breakdown of the marriage.
5. The testimony of the defendant during the course of the trial lacked credibility.
6. The lease executed by the defendant for the apartment at 70 Anderson Lane, Southport, occupied by the defendant was not authorized by the plaintiff, the President and sole stockholder of the corporation owning said property.
7. There was no "break-in" by the plaintiff into the apartment at 70 Anderson Lane, Southport, occupied by the defendant since the plaintiff was authorized as sole stockholder and chief operating officer of the corporation that owned the property.
8. It appears that the plaintiff has appropriately filed her personal and corporate tax returns and that the same have been properly prepared.
9. The court finds that an amount of Three Thousand Six Hundred Seventeen Dollars and Fifty Cents ($3,617.50) is a fair and reasonable amount for Attorney Reath's services as counsel for the minor children. The court finds further that this amount should be shared equally between the parties and the CT Page 10725 plaintiff has paid Nine Hundred Dollars ($900.00) toward her half.
10. The findings made by the court in its Memorandum of Decision dated October 28, 1996, continue to be the findings of the court in this proceeding except to the extent that any findings herein may be contrary to those findings in which event the findings made herein shall control.
The court shall enter the following orders.
1. A decree of dissolution of marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. Custody of the two minor children, Alexis Toth and Aaron Toth, shall be with the plaintiff. The defendant shall have flexible and liberal visitation with his sons, father and sons to make their own arrangements to include visitation on weekends, a weekday evening, holidays and vacations.
3. There shall be no alimony to either of the parties.
4. The defendant shall pay as child support Two Hundred Forty ($240.00) Dollars per week until each of the children graduate from high school, but no later than age 19, commencing the first Friday after the date hereof and payable each Friday thereafter. There shall be an immediate order for wage withholding to secure these payments.
5. The defendant shall maintain, at his sole cost and expense, health and dental insurance for the benefit of the minor children as long as they are eligible to be covered under his policy. He shall also be responsible for one half of all unreimbursed medical, dental, psychological, prescription medications and orthodontic expenses as long as they are eligible for insurance under his policy. The defendant is to immediately notify the plaintiff in the event said insurance is terminate. In that event, the defendant shall continue to provide at his sole expense, an equivalent policy for the benefit of the minor children. If he fails to notify the plaintiff, she shall be entitled to reimbursement from the defendant.
6. The plaintiff's Motion for Modification of alimony dated February 18, 1997, is granted and the order for pendente lite CT Page 10726 alimony shall be terminated as of that date with no arrearage due and owing to the defendant and no amount owed to the plaintiff by way of over payment, if any.
7. The defendant shall immediately vacate (no later than sixty (60) days from the date of this decision) the apartment he occupies at 70 Anderson Lane, Fairfield, Connecticut, and leave it in broom clean condition. The defendant shall be responsible for any damage to the apartment and for the cost and/or replacement of any missing or damaged items. This provision of the judgment shall not be stayed by any motion to reargue or appeal in this matter, but shall be effective from and after sixty (60) days from the date hereof.
8. The plaintiff shall retain all real properties listed below, whether inherited or otherwise acquired, free from any claim by the defendant:
a. 238, 244, 260 Old Post Road, Southport, Connecticut;
b. 70 Anderson Lane, Southport, Connecticut;
c. 53 Unquowa Place, Fairfield, Connecticut;
d. 19 Gorham Avenue, Westport, Connecticut.
9. The defendant shall be restrained from going within fifty (50) feet of the plaintiff's properties effective immediately except as to 70 Anderson Lane, Southport, and 19 Gorham Avenue, Westport. The defendant shall be permitted to pick up his children for visitation at the end of the driveway of 19 Gorham Avenue, Westport. As to 70 Anderson Lane, Southport, this provision shall be effective upon the defendant's vacating of the apartment at 70 Anderson Lane. As was true of the provisions of paragraph 7 hereof, this provision of the judgment also shall not be stayed by a motion to reargue or appeal in the matter but shall be effective from and after the date hereof.
11. The plaintiff shall retain all her corporations, free from any claim or demand by the defendant.
12. The defendant shall retain all his companies, free from any claim or demand by the plaintiff. CT Page 10727
13. The plaintiff shall quit claim her right, title and interest in the property located in Puerto Rico to the defendant. He shall be responsible for all costs associated with said property including, but not limited to the mortgage, real estate taxes, insurance, etc., and shall save and hold harmless the plaintiff from same. The gross equity value is approximately $130,000.
14. The defendant shall transfer to the plaintiff the bond from the Patterson Club and also transfer his membership therein to her within thirty (30) days of the date hereof.
15. The plaintiff shall pay Attorney Reath the sum of Nine Hundred Eight Dollars and Seventy-five Cents ($908.75) within thirty (30) days of the date hereof. The defendant shall pay Attorney Reath the sum of Eighteen Hundred Eight Dollars and Seventy-five cents ($1808.75) within thirty (30) days of the date hereof.
16. The plaintiff shall provide to the defendant negatives of pictures of the two minor children, and he shall make copies of these pictures at his sole cost and expense and return the negatives to her.
17. The plaintiff shall provide copies of all videos requested by the defendant, to be paid for in advance by the defendant.
18. The defendant shall be restrained from interfering by any means whatsoever with the plaintiff's companies and/or properties. This provision of the judgment shall likewise not be stayed by the filing of any motion to reargue or appeal in this matter.
19. Defendant claims plaintiff has certain tangible personal property of his, i.e., items of jewelry. The court does not so find and denies defendant's request in paragraph 13 of his claims for relief except as set forth in Schedule A attached hereto.
20. The plaintiff shall pay to the defendant the sum of Three Thousand Three hundred Thirty-five ($3,335) Dollars to be applied to payment of the defendant's Home Depot charge account, which sum shall be paid within thirty (30) days of the date hereof. The defendant shall be wholly responsible for the balance of his Home Depot charge account and all CT Page 10728 other of his credit cards to include Providian Bancorp, MBNA Visa, MBNA Mastercharge and GM Gold Card. The plaintiff shall be responsible for those credit cards in her name. Each shall indemnify and hold harmless the other from any claim or demand thereon.
21. The plaintiff shall pay to the defendant the sum of Twenty-Five Thousand ($25,000) Dollars within thirty (30) days of the date hereof.
22. The real property at 160 Farmstead Hill Road in Fairfield shall continue to be in plaintiff's name. The plaintiff shall continue to apply the fire insurance proceeds to the restoration of the house to a saleable condition. The property shall be placed upon the market for sale at a price and upon such terms as the plaintiff shall determine and without any interference by the defendant. Upon the sale of said property, the plaintiff shall pay to the defendant the sum of Seventy-Five Thousand ($75,000) Dollars, which said sum shall be paid over to him simultaneous with the receipt of the sale proceeds. The defendant shall not be entitled to any claim of interest should there be a delay in the sale and shall have no right to claim that the property should be sold at a lower price or at an earlier time in order to accelerate the payment to him of said Seventy-five Thousand ($75,000) Dollars. The property transfer to the defendant in paragraph 13 hereof, the payments in paragraphs 20 and 21 hereof, together with this paragraph and the division of tangible personal property in paragraph 23 shall constitute the court's assignment of property pursuant to § 46b-81 of the General Statutes.
23. The defendant shall have the tangible personal property set forth in Schedule A hereto attached and the tangible personal property presently in his possession, together with the tangible personal property in the Puerto Rico condominium. The tangible personal property on Schedule A shall be made available to the defendant on a date convenient to both of the parties and within sixty (60) days of the date hereof. All other tangible personal property in the plaintiff's possession or under her control shall remain her personal property free of any claim or demand by the defendant.
24. Each party shall be responsible for the liabilities listed in her or his financial affidavit and shall indemnify and hold CT Page 10729 harmless the other party from any claim or demand thereon.
25. The defendant shall maintain such life insurance as he has available through any employer naming his children Alexis and Aaron Toth as irrevocable first beneficiaries thereof for so long as he is obligated to pay support.
26. The defendant shall release his lis pendens on 238, 244, 260 Old Post Road, Southport, Connecticut, 53 Unquowa Place, Fairfield, Connecticut, forthwith. The lis pendens on 160 Farmstead Hill Road, Fairfield, Connecticut, shall be released at the time said property is to be sold.
27. Each party shall pay her or his own attorney's fees without any contribution from the other party.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE
SCHEDULE A
 A. PROPERTY OF THE DEFENDANT[1],[2]
1. Cuff links, 4 sets in various styles
2. Tux set and cuff links, 18 kt gold, onyx stone
3. Tux set and cuff links, 18 kt gold, knotted style
4. Tux set and cuff links, silver and black
5. Coin collection
6. Eclipse radar detector
7. Tux set cuff links 22 kt gold, lapis stone
8. Tux set cuff links, beaded, 18 kt gold and ring
9. Propane torch head trigger tip
10. Black Decker Hammer drill, rotary type
11. Jig saw CT Page 10730
12. Electric palm sander
13. Drill press
14. Propane torch heads, standard type
15. DC/AC converter
16. (2) Disc Sanders
17. Electric meter
18. 16 inch Chop saw, miter cut
19. 7 inch Skill saw
20. 1/2 inch heavy duty drill
21. Makitia Drill, batteries and chargers
22. Sawzall
23. 5 inch Skill saw
24. Brass floor lamp in the living room (item no. 8[3])
25. (2) Crystal lamps (item no. 20, Schedule K)
26. Chess set purchased in Venice (item no. 29, Schedule K)
27. Brass container (item no. 31, Schedule K)
28. African mask (item no. 32, Schedule K)
29. TV set (item no. 33, Schedule K)
30. Metal, old fashion car, purchased in Mexico (item no. 34)
31. Metal merry-go-round, purchased in Mexico (item no. 35)
32. Table and (2) chairs (item no. 37, Schedule K)
33. Hurricane Lamp from Vermont condo no. 24 (item no. 46)
34. Dining room chairs (6) from Vermont condo no. 24 (item no. CT Page 10731 47)
35. Dining room table from Vermont condo no. 24 (item no. 47A)
36. Lamp from Vermont condo no. 24 (item no. 48)
37. Artificial tree from Vermont condo no. 24 (item no. 51, Schedule K)
38. Vase with dried flowers (item no. 53, Schedule K)
39. Kitchen stools (4) (item no. 54, Schedule K)
40. Drapes (matching dining room chairs) (item no. 55, Schedule K, if not destroyed by fire)
41. 16" Beige ceramic horse (item no. 87, Schedule K)
42. Red wine glasses with gold rim (12) (item no. 92, Schedule K)
43. White wine glasses with gold rim (12) (item no. 93, Schedule K)
44. Champagne glasses with gold rim (12) (item no. 94, Schedule K)
45. Short tumblers with gold rim (12) (item no. 95, Schedule K)
46. Tall tumblers with gold rim (12) (item no. 96, Schedule K)
47. Every day dishes from Vermont condo 24 (item no. 97, Schedule K)
48. Every day silverware from Vermont condo 24 (item no. 98, Schedule K)
49. Sharp cam recorder (item no. 100, Schedule K)
50. 35mm slide projector (item no. 101, Schedule K)
51. Projection screen 48-54 inches (item no. 102, Schedule K)
52. The following items now or formerly in the study:
a. leather sleeper sofa CT Page 10732
b. coffee table
c. two chairs
d. birchwood book shelf wall units (3)
e. table and 4 chairs
f. fireplace set
53. The following items now or formerly in the master bedroom:
a. black lacquer head and foot board, queen size
b. black lacquer wall unit
c. black lacquer night tables (2)
d. Lamps on bureau
e. black lacquer bureau
f. mirror over bureau
54. Tool cabinets in basement/tool room
55. Silver bowl award from Patterson Club tennis match
56. Wilson Proshaft tennis racquet (1)
57. Such additional items listed as "Available" on plaintiff's exhibit 00-1 as defendant may choose.
58. Any items of the defendant not listed, entirely of a personal nature which might be described as "defendant's sole personal property." If there is any dispute between the parties with regard to such property, such property shall be denied to the defendant and shall not be considered as "defendant's sole personal property."