[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant mother has filed a pro se post-judgment motion to modify seeking an increase in the support order for her two children. She also filed a pro se contempt motion seeking enforcement of a court order that the defendant pay 50% of her day care expenses. The plaintiff father opposes both motions.
The underlying judgment followed a paternity petition filed in early 2001. The plaintiff alleged that the defendant fathered two children: Giahnni Cree Fernandes, born December 7, 1999 and Devonte Jordan Wright, born December 21, 2000. While the petition was pending, DNA tests were conducted administratively. The reported results indicated a 99.97% probability that the defendant is Giahnn's father and 99.94% probability that he is Devonte's father. Faced with these results, the defendant executed acknowledgments for both children, which the court accepted in conclusion of the paternity petition and entered judgment accordingly. However, the parties continued to dispute child support, arrearages and ancillary orders, all of which were contested over a matter of months.
This court issued the initial child support order on June 26, 2001. The court ordered the respondent to pay $204.00 per week in unallocated child support. The court found the defendants gross income to be $1,443.00 per week. This was based on the defendant's reported income as a Hartford police officer. The defendant receives substantial overtime income. The amount of overtime income includable is limited by law. General Statutes § 46b-215d[1]; Regs., Conn. State Agencies § 46b-215a-1
(11) (A) (ii)[2]. The court included substantial amounts of overtime within those limits in determining the defendants gross income for purposes of the guidelines calculation. The defendant was allowed a qualified child deduction. The resulting net weekly income was computed by the court to be $696.00. The plaintiff's income at the time was reported to be $0. However, the defendant claimed that the court should deviate because he claimed that the plaintiff mother had a substantial earning capacity. The court found that the presumptive guidelines order CT Page 12467 was $244.00 per week, but after hearing the evidence, found that the plaintiff mother had an earning capacity of $42,000.00 per year. Based on that finding the court deviated downward to arrive at the $204.00 weekly order.
The court also ordered both parties to maintain medical and dental insurance for the children and to equally share any uninsured or unreimbursed medical and dental expenses. The defendant was also ordered to pay 50% of all reasonable, necessary and employment related day care costs for the children. It took several additional months and two additional hearings to finalize the ancillary orders and determine the arrearage for past due support. The defendant was ordered to pay an additional $16.00 per week on the accrued arrearage and the findings and orders were finalized by the court, Burt, F.S.M. on September 13, 2001. The plaintiff filed the present motions immediately thereafter. The motions resulted in additional evidential hearings on the special hearing docket[3].
 I
The plaintiff's motion to modify seeks an increase in the child support order. The motion was filed pro se on form JD-FM-174 designed to expedite getting such motions before the court. The motion states as her claimed change of circumstances: "father's has refused (sic) to pay day care expenses to date. I can't afford to work until this matter is resolved." During the course of the hearings the plaintiff argued that the defendant's refusal to pay day care precluded her from obtaining employment consistent with the court's prior earning capacity finding. She argues that the preclusion of her meeting her earning capacity potential constitutes a substantial change of circumstances. She also argues that additional overtime and alleged supplemental private duty jobs have substantially increased the defendant's income to over $2,200.00 gross per week, a substantial increase which warrants upward modification.
The burden of proof is on the party seeking the modification. Connollyv. Connolly, 191 Conn. 468, 473, 464 A.2d 837 (1983); Kaplan v. Kaplan,185 Conn. 42, 46, 440 A.2d 252 (1981); Richard v. Richard,23 Conn. App. 58, 63, 579 A.2d 110 (1990);Vonaa v. Vonaa, 15 Conn. App. 745, 747,546 A.2d 923 (1988); Muyres v. Muyres, 16 S.M.D. ___ (2002); Mansfield v.Haynes, 12 S.M.D. 51, 52 (1998); Moffit v. Moffit, 12 S.M.D. 41, 42 (1998); Danford v. Symonds, 12 S.M.D. 32, 33 (1998); Murray v. Stone, 11 S.M.D. 149, 150 (1997); O'Dell v. O'Dell, 9 S.M.D. 7 (1995); Meyer v.Meyer, 7 S.M.D. 49, 52 (1993); Taylor v. Taylor, 7 S.M.D. 43, 44 (1993); CT Page 12468Yochum v. Yochum, 6 S.M.D. 75, 80 (1992); Noble v. Noble, 6 S.M.D. 31, 32 (1992); Berluti v. Berluti, 5 S.M.D. 377, 381 (1991); Dubitzky v.Dubitzky, 5 S.M.D. 261, 271 (1991); Monahan v. Monahan, 4 S.M.D. 223, 227 (1990).
The moving party must demonstrate "that continued operation of the original order would be unfair or improper." McGuinness v. McGuinness,185 Conn. 7, 10, 440 A.2d 804 (1981); Noce v. Noce, 181 Conn. 145, 149,434 A.2d 345 (1980); Harlan v. Harlan, 5 Conn. App. 355, 357, 496 A.2d 129
(1985); Benjamin v. Bibbins, 16 S.M.D. ___, 2002 Ct. Sup. 3448 (2002);Mansfield v. Haynes, supra, 12 S.M.D. 52; Moffit v. Moffit, supra, 12 S.M.D. 42; Danford v. Symonds, supra, 12 S.M.D. 33; Murray v. Stone, supra, 11 S.M.D. 151; Kimery v. Kimery, supra, 9 S.M.D. 57; Taylor v.Taylor, supra, 7 S.M.D. 45; Yochum v. Yochum, supra, 6 S.M.D. 80; Noblev. Noble, supra, 6 S.M.D. 33; Kraynak v. Godfrey, 5 S.M.D. 250, 251 (1991); Romaniello v. Romaniello, 5 S.M.D. 87, 91 (1991). "The party seeking modification must clearly and definitely show individual facts and circumstances which have substantially changed." McGuinness v.MeGuinness, supra, 185 Conn. 10; Cooksley v. Tedaro, 13 S.M.D. 273, 279 (1999).
"In determining whether there is a substantial change in circumstances, the court considers all evidence back to the most recent court order." Borkowski v. Borkowski, 228 Conn. 729, 741, 638 A.2d 1060
(1994); Cooksley v. Tedaro, supra, 13 S.M.D. 279-280; Mylie v. Mylie, 13 S.M.D. 68, 69 (1999); Danford v. Symonds, supra, 12 S.M.D. 34; Swain v.Swain, 10 S.M.D. 187, 189 (1996); Thomas v. Thomas, 8 S.M.D. 196, 198 (1994).
Although the gross income of the defendant appears to have increased, the evidence suggests that this is in large measure due to expansion of his overtime and private duty work. His basic job is unchanged and the original order already considered overtime within the limits set by the guidelines and the statute. The timing of the present motion is suspect, coming immediately after the conclusion of the prior proceedings. It is clear that the plaintiff was dissatisfied with the failure to include all of the defendant's overtime and private duty income. In this sense, the plaintiff essentially seeks to reargue the prior decision. The additional income alleged all falls outside the limits of income which may be included for calculation of child support. Therefore, it provides no new basis to warrant a modification of the support order. Russell v.Russell, 61 Conn. App. 106, 762 A.2d 523 (2000).
The court is likewise unpersuaded by the plaintiff's argument that the failure of the defendant to pay his share of day care precludes her from CT Page 12469 earning income consistent with the court's finding of her earning capacity. The failure of the defendant to contribute to day care expenses is an enforcement issue, which the plaintiff is vigorously pursuing via the contempt motion herein decided. It does not diminish her earning capacity.
It is well established that a court may consider a party's earning capacity rather than actual income in computing a support order. Johnsonv. Johnson, 185 Conn. 573, 576, 441 A.2d 578 (1981); Miller v. Miller,181 Conn. 610, 611-12, 436 A.2d 279 (1980); Siracusa v. Siracusa,30 Conn. App. 560, 566, 621 A.2d 309 (1993); Carey v. Carey,29 Conn. App. 436, 440, 615 A.2d 516 (1992);Hart v. Hart, 19 Conn. App. 91, 94,561 A.2d 151 (1989); Moffit v. Moffit, 12 S.M.D. 41, 43, 1998 Ct. Sup. 6530
(1998); Danford v. Symonds, supra, 12 S.M.D. 36; Murray v. Stone, 11 S.M.D. 149, 152 (1997); Brown v. Brown, 11 S.M.D. 140, 147 (1997);Englemann v. Englemann, 10 S.M.D. 90, 147 (1997); Henja v. Brown, 10 S.M.D. 42, 147 (1996); Kimery v. Kimery, 9 S.M.D. 54, 57 (1995); Jodoinv. Jodoin, 9 S.M.D. 7, 8 (1995); Hay v. Hay, 8 S.M.D. 51, 54 (1994);Guidone v. Moschette, 8 S.M.D. 10, 11 (1994); Webster v. Webster, 8 S.M.D. 4, 5 (1994); Campbell v. Scott, 7 S.M.D. 8, 12, 8 CSCR 507, 11
Conn.Fam.L.J. 71 (1993); Bardsley v. Bardsley, 6 S.M.D. 112, 116 (1992);Ouellette v. Ouellette, 6 S.M.D. 83, 85 (1992). The child support guidelines provide for deviation where the court finds "[o]ther financial resources available to a parent." A parent's earning capacity is specifically included in this subsection. Regs., Conn. State Agencies § 46b-215a-3- (b) (1) (B).
In sum, the plaintiff has failed to sustain her burden of proof that there has been a substantial change of circumstances. In fact the circumstances are virtually identical to those upon which the order was based. The motion to modify is denied.
 II
The plaintiff mother now operates a hair styling business specializing in braiding. According to her financial affidavit, she earns $400.00 per week gross income from this business. She claims day care expenses of $300.00 per week. For the period of time covered by the contempt citation, May through October, 2001, she claims $5,860.00 in total day care costs. The court order provides that the defendant must contribute 50% of all reasonable, necessary and employment-related day care costs. Thus she claims $2,930.00 for the five months in question. The defendant has refused to contribute to the claimed day care. It is apparently his position that the day care is not wholly employment related and the cost CT Page 12470 is not reasonable.
Ms. Fernandes has engaged Ms. Dorothy Aljoe to provide day care services for the two children. She has documented the costs to be $300.00 per week. The plaintiff's business involves intricate braiding or micro-braiding of hair. She usually provides these services at the home of the client, often at night or on weekends to accommodate clients who work regular hours. Depending on the style chosen and the age of the client, she works on a client from three hours to as much as twelve hours at a time. Because the children may be left in Mrs. Aljoe's care twelve hours or more at a time, which may be at night or on a weekend, the plaintiff claims that the costs are reasonable. The court agrees.
However, the defendant is only responsible for day care necessary to allow the plaintiff to engage in her profession. The plaintiff, in response to the court's disclosure order, has produced detailed records of her working dates. The records indicate that she works an average of ten days per month. Although the court does not doubt that her arrangement with Mrs. Aljoe requires a flat rate weekly payment, whether or not the plaintiff works, the court order simply does not require the defendant to pay for day care services when the plaintiff does not work.
Based on a standard five day a week eight hours a day employment, the day care costs of both children would work out to $60.00 per day. Accordingly, the court finds that the employment related day care costs subject to contribution by the defendant are $30.00 per child per day for each day Ms. Fernandes worked eight hours or less. Any day in which she worked significantly more than eight hours, the day care cost is deemed to be $45.00 per child subject to a maximum of $300.00 for any calendar week. The defendant is required to pay 50% of these amounts.
The plaintiff's records include a monthly summary listing each client and the services provided. With the explanatory testimony of the plaintiff it is possible to determine the days which she worked and reasonably estimate the days she significantly exceeded eight hours. Charges of $100 or more would indicate services that required significantly more than eight hours of work.
Based on the evidence submitted, the court finds chargeable employment related day care in the month of May, 2001 to total $360.00 (two days at $90 plus three days at $60). The defendant's share is $180.00. In June, 2001, the total is $660.00 (four days at $90 plus five days at $60). The defendant's share is $330.00. In July, 2001, the total is $900.00 (six days at $90 plus six days at $60). The defendant's share is $450.00. In August, 2001, the total is $360.00 (six days at $60). The defendant's CT Page 12471 share is $180.00. In September, 2001, the total is $270 (one day at $90 plus three days at $60). The defendant's share is $135. In October, 2001, the total is $780.00 (four days at $90 plus seven days at $60). The defendants share is $390. The defendant owes a total of $1,665.00 through the month of October, 2001. The defendant is ordered to pay that amount to Ms. Fernandes on or before October 7, 2002. Both parties are ordered to confirm the payment to the Support Enforcement Division.
For all months subsequent to October, 2001, the plaintiff shall submit a copy of her "financial reporting" statement, together with a cover sheet calculating chargeable day care in a manner consistent with this decision (i.e. $90 when significantly over 8 hours, as indicated by fees of $100 or more, $60 for days in which fees of less than $100 are generated). The plaintiff shall submit such statements for each month through September, 2002, with a copy to Support Enforcement on or before November 1, 2002. The defendant shall pay those charges in full within thirty days submission of the statements. Both parties shall confirm payment to support enforcement. Thereafter, the plaintiff shall submit similar monthly statements within two months. The defendant is to make payment within one month thereafter.
The present contempt citation is continued to the contempt docket of Wednesday, October 30, 2002 to monitor compliance with payment of the $1,665 lump sum ordered above. Support enforcement is authorized to excuse the parties if payment is verified prior to that date. Thereafter, payments pursuant to these orders are enforceable by contempt citation.
BY THE COURT
 Harris T. Lifshitz Family Support Magistrate