SUSAN GRAHAM *v.* WILLIAM L. GRAHAM
(9047)

LAVERY, HEIMAN and CRETELLA, Js.

Argued March 26—decision released June 11, 1991

*Norman J. Voog,* with whom, on the brief, was *Allen Gary Palmer,* for the appellant (defendant).

*Joseph Dimyan,* for the appellee (plaintiff).

*Susan S. Reynolds,* for the minor child.

HEIMAN, J. In this dissolution action the defendant claims that the trial court abused its discretion (1) in ordering him to pay periodic alimony, child support, and all costs incurred in connection with his occupancy of the marital home when the total of these payments exceeds his earning capacity, (2) in awarding the plaintiff a disproportionate share of the marital assets in light of its other financial orders and its refusal to return to the defendant his investment in the marital home, and (3) in awarding the plaintiff $15,000 as counsel fees in light of the other financial awards it made to the plaintiff. In addition, the defendant claims, as a nonfinancial issue, that the trial court improperly admitted into evidence a custody study that was previously ordered by the court, because the study contained prejudicial hearsay and because Practice Book § 479[1]

---

[1] "[Practice Book] Sec. 479. CASE STUDY REPORTS

"Whenever, in any family relations matter, a case study has been ordered, the case shall not be disposed of until the report has been filed as hereinafter provided, and counsel and the parties have had a reasonable opportunity to examine it prior to the time the case is to be heard, unless the court shall order that the case be heard before the report is filed, subject to modification on the filing of the report.

"Any report of a case study shall be made in quadruplicate, shall be filed with the clerk, who will impound such reports, and shall be mailed to counsel of record. Said report shall be available for inspection only to counsel of record and to the parties to the action, unless otherwise ordered by the court.

"Said report shall be admissible in evidence provided the author of the report is available for cross-examination."

exceeds the constitutional scope of the inherent rulemaking power of the Superior Court. We affirm the judgment of the trial court.

The facts necessary to a resolution of this matter may be briefly summarized as follows. The parties were married in Yorktown Heights, New York, on August 6, 1978. One child was born of this union on September 16, 1984. The plaintiff was thirty-one years of age at the time of the dissolution. She was a high school graduate and had obtained certification in graphic design from the Art Institute of Boston in 1988. She is self-employed as a graphic designer and enjoys good health. She has an earning capacity of $50,000 to $54,000 per year. The defendant was thirty-four years of age at the time of the judgment. After completing high school he attended Franklin Institute of Boston where he obtained an associates degree in electrical engineering. He became employed by the Perkin-Elmer Corporation and, while so employed, obtained a bachelor of arts degree in electrical engineering. Shortly after receiving this degree, he left the employ of Perkin-Elmer to join the plaintiff in a graphic design business. While at Perkin-Elmer, the defendant demonstrated an earning capacity of $25,000 per year. He enjoys good health.

After a fully contested trial, the trial court expressly found (1) that each of the parties had contributed to the breakdown of the marriage but that the "evidence establishes that the defendant is more culpable in producing that result," (2) that the defendant has a stock portfolio, acquired through "family largess and his father's substantial investment talent," with a value in excess of $200,000, and (3) that the parties were the owners of a marital domicile that had a value of $440,000 with an equity of approximately $248,000 taking into account a mortgage encumbrance of $167,000, and a $25,000 debt to the defendant's parents. The mar-

ital domicile was the second home that had been purchased by the parties during the course of their marriage. The parties purchased their first home for $104,500. The funding for the purchase of this home came from a loan from the defendant's parents in the amount of $50,000 ($25,000 of which remains due), $30,000 to $40,000 from the defendant's stock portfolio, and the balance from a mortgage. That property was sold for $234,500. The parties then purchased a second marital domicile for $375,000. The funding for the purchase of this home was derived from the net proceeds of the sale of the first house, $82,000 from defendant's stock portfolio, and a $176,000 mortgage.

The trial court entered the following financial orders and orders concerning division of property. The defendant was ordered to pay the sum of $125 per week as support for the minor child. He was also ordered to pay periodic alimony at the rate of $200 per week for a term of five years from the date of the decree, or until the death of the plaintiff, the death of the defendant, the plaintiff's remarriage and/or the plaintiff's cohabitation with an unrelated male, whichever shall first occur. In addition, the court ordered that the marital domicile be sold and that 65 percent of the net proceeds be distributed to the plaintiff and 35 percent to the defendant. The net proceeds were to be calculated after deducting the encumbrances, the expenses of the sale, the adjustments, and the repayment of the $25,000 debt due to the defendant's parents. The trial court also ordered that the defendant was to have exclusive use and occupancy of the marital domicile until the property was sold. The defendant was ordered to pay all costs incurred in connection with his occupancy. He was also ordered to pay the plaintiff's counsel fees in the amount of $15,000 within twelve months from the date of the court's decree. The trial court also ordered that the defendant was to retain all right, title and interest

in his stock portfolio of approximately $200,000. Each party was ordered to refrain from conducting any business under the name of Graham Design within the state of Connecticut, and each party was to retain all accounts, assets and receivables from that business that each then possessed, with certain exceptions.

I

The defendant first claims that the trial court abused its discretion by ordering him to pay alimony, child support and all costs in connection with his occupancy of the marital domicile when these payments exceed his earning capacity, as found by the trial court, by $435 per week. We do not agree.

It is axiomatic that trial courts are vested with broad and liberal discretion in fashioning orders of custody and the type, duration and amount of alimony and support that is proper, applying to each case the standards and guidelines of the General Statutes. *Ayers* v. *Ayers,* 172 Conn. 316, 321–22, 374 A.2d 233 (1977). If the trial court in exercising its broad discretion in the award of alimony and support, or in dividing property, considers all of the relevant statutory criteria its award cannot be disturbed unless it appears that such discretion has been abused. *Debowsky* v. *Debowsky,* 12 Conn. App. 525, 526, 532 A.2d 591 (1987). An examination of the record discloses that the trial court properly considered all relevant statutory criteria.

The trial court is not required to give equal weight to each of the specified criteria it considers in determining its award, nor is any single criterion preferred over the others. *Carpenter* v. *Carpenter,* 188 Conn. 736, 740–41, 453 A.2d 1151 (1982). Where, as here, it is apparent that the trial court considered all mandatory factors in fashioning its orders, we are not permitted to vary the weight that the trial court placed upon the statutory criteria in reaching its decision. *Kinney* v.

*Kinney,* 5 Conn. App. 484, 487, 500 A.2d 569 (1985), cert. denied, 199 Conn. 804, 506 A.2d 146, cert. denied, 479 U.S. 818, 107 S. Ct. 78, 93 L. Ed. 2d 33 (1986).

The defendant appears to relate his dissatisfaction with the trial court's orders to some veiled claim that earning capacity represents a cap on weekly orders. We do not agree. In fashioning its weekly orders, the trial court was aware of the fact that the defendant had a stock portfolio with a value in excess of $200,000 and expressly found that the parties "enjoyed a standard of living which exceeded their earning capacity." The trial court also knew that the defendant had invaded the corpus of his assets in order to provide additional monies to meet the parties' desires for material things. " 'In fixing the amount of alimony and support, the estate of the husband and his income, age, health and earning capacity are the circumstances primarily to be considered.' " *Stoner* v. *Stoner,* 163 Conn. 345, 353, 307 A.2d 146 (1972).

Our examination of the entire record leads us to conclude that the orders of the court with respect to weekly orders were proper and not an abuse of discretion.

II

The defendant next launches an attack upon the order of the trial court dividing the marital assets. He claims that the trial court awarded the plaintiff a disproportionate share of the marital assets in view of its financial orders and its refusal to return to the defendant, at a minimum, his investment in the marital domicile as found by the trial court. We disagree.

General Statutes § 46b-81 (a)[2] expressly provides that at the time of entering a decree dissolving a marriage,

---

[2] General Statutes § 46b-81 (a) provides: "At the time of entering a decree annulling or dissolving a marriage or for legal separation pursuant to a complaint under section 46b-45, the superior court may assign to either

the trial court may assign to either party all or any part of the estate of the other. General Statutes § 46b-81 (c)[3] sets out the criteria that the trial court must apply in determining a proper distribution of the assets of the parties.

The trial court is accorded wide discretion in determining the proper allocation of the assets of the parties. *Szilagyi* v. *Szilagyi*, 3 Conn. App. 25, 29, 484 A.2d 469 (1984). The standard of review in family matters is that this court will not disturb the trial court's orders unless it has abused its legal discretion or its findings have no reasonable basis in fact. *McPhee* v. *McPhee*, 186 Conn. 167, 177, 440 A.2d 274 (1982). In determining the assignment of marital property under General Statutes § 46b-81, the trial court may properly consider the standard of living of the parties and weigh it in light of the other statutory factors. *Blake* v. *Blake*, 207 Conn. 217, 232, 541 A.2d 1201 (1988).

The trial court must consider all of the statutory criteria and no single criterion is preferred over another. The weight to be accorded to each factor is a matter of the exercise of the trial court's discretion. *Weinstein* v. *Weinstein*, 18 Conn. App. 622, 633, 561 A.2d 443 (1989).

---

the husband or wife all or any part of the estate of the other. The court may pass title to real property to either party or to a third person or may order the sale of such real property, without any act by either the husband or the wife, when in the judgment of the court it is the proper mode to carry the decree into effect."

[3] General Statutes § 46b-81 (c) provides: "In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

The trial court exercised its discretion properly and did not abuse it in its orders concerning the distribution of property.

## III

The defendant claims that the trial court improperly admitted a family relations custody study into evidence. Among other reasons, the defendant asserts that Practice Book § 479 exceeds the constitutional scope of the rulemaking power of the Superior Court. Because this claim is not directed to any issue relating to the award of custody of the minor child, we decline to review this evidentiary ruling.

Although the issue concerning the admissibility of the report itself is clearly raised in this appeal, the defendant does not, either in his preliminary statement of issues or in the issues set forth in his brief, claim that the trial court improperly awarded custody to the plaintiff. Rather, his quarrel is with an underlying evidentiary ruling, when he has not attacked the final order of custody as being incorrect.

We decline to decide the issue raised because the defendant did not appeal the trial court's award of custody to the plaintiff and thus, he cannot demonstrate any probable harm that he has suffered because of the evidentiary ruling. *Starzec* v. *Kida,* 183 Conn. 41, 49, 438 A.2d 1157 (1981).

Further, because the defendant failed to attack the judgment of the trial court awarding custody, the evidentiary issue is moot. " 'It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow.' " *State* v. *Smith,* 207 Conn. 152, 178, 540 A.2d

679 (1988); *Accurate Forging Corporation* v. *UAW Local No. 1017,* 189 Conn. 24, 26, 453 A.2d 769 (1983).

## IV

The defendant's final claim is that the trial court abused its discretion or committed plain error in its award of counsel fees to be paid by the defendant to the plaintiff in the amount of $15,000. We disagree.

The factual predicate upon which the defendant relies is the fact that the plaintiff was awarded the family business that he claims was the parties' sole source of income during the last five years of their marriage, and the fact that the plaintiff was awarded 65 percent of the net proceeds from the sale of the marital domicile.

In the first instance, the defendant's claim that the plaintiff was awarded the family business is not supported by either the trial court's memorandum of decision or the judgment. The power to order the payment of attorney's fees is derived from General Statutes § 46b-62.[4] The trial court is authorized to order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in General Statutes § 46b-82.[5]

---

[4] General Statutes § 46b-62 provides: "In any proceeding seeking relief under the provisions of this chapter and sections 17-323a, 17-323b, 45-162, 46b-1, 46b-6, 46b-204, 47-14g, 51-348a and 52-362, the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82. If, in any proceeding under this chapter and said sections, the court appoints an attorney for a minor child, the court may order the father or mother, or both, to pay the reasonable fees in whole or in part from the estate of the child. If the child is receiving or has received state aid or care, the reasonable compensation of the attorney shall be established by, and paid from funds appropriated to, the judicial department."

[5] General Statutes § 46b-82 provides: "At the time of entering the decree, the superior court may order either of the parties to pay alimony to the other, in addition to or in lieu of an award pursuant to section 46b-81. The order may direct that security be given therefor on such terms as the court

"The trial court exercises broad discretion in determining whether to allow counsel fees, and, if so, in what amount. In exercising that discretion, the court must consider the statutory criteria set out in General Statutes §§ 46b-62 and 46b-82 and the respective financial abilities of the parties." *Lawler* v. *Lawler,* 16 Conn. App. 193, 205, 547 A.2d 89 (1988), appeal dismissed, 212 Conn. 117, 561 A.2d 128 (1989). Although the trial court should consider the liquid funds available to a party when determining whether to award attorney's fees; *Koizim* v. *Koizim,* 181 Conn. 492, 501, 435 A.2d 1030 (1980); even " ' "the availability of 'sufficient cash' to pay one's attorney's fees is not an absolute litmus test . . . . " ' " *Palazzo* v. *Palazzo,* 9 Conn. App. 486, 489, 519 A.2d 1230 (1987). "Whether a spouse has 'ample liquid funds' with which to pay counsel fees . . . can only be determined by examining the total financial resources of the parties in light of the statutory criteria." (Citation omitted.) *Venuti* v. *Venuti,* 185 Conn. 156, 163, 440 A.2d 878 (1981). Additionally, the trial court must exercise its discretion so that its decision as to counsel fees does not undermine its purpose in making awards with respect to alimony, support and division of assets. *Palazzo* v. *Palazzo,* supra.

Here, other than periodic alimony and support, the only source of liquid assets that at some time in the

may deem desirable, including an order to either party to contract with a third party for periodic payments or payments contingent on a life to the other party. In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

future may be available to the plaintiff would be her share in the net proceeds from the sale of the marital domicile. Under our criteria, the plaintiff did not possess sufficient ample liquid funds with which to pay counsel. In addition, the trial court reasonably could have concluded that it wanted to preserve the plaintiff's share of the proceeds from the sale of the marital domicile for her use, unencumbered by charges against that fund for attorney's fees. See *Eslami* v. *Eslami,* 218 Conn. 801, 820–21, 591 A.2d 411 (1991); *Devino* v. *Devino,* 190 Conn. 36, 38–39, 458 A.2d 692 (1983).

The trial court's memorandum of decision clearly reflects that it properly weighed and considered the factors necessary to a proper resolution of the counsel fees issue. *O'Neill* v. *O'Neill,* 13 Conn. App. 300, 306, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988).

The trial court did not abuse its discretion nor did it commit plain error in awarding attorney's fees.

The judgment is affirmed.

In this opinion the other judges concurred.