[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANT'S MOTION FOR MODIFICATION
CT Page 8224(DOCKET ENTRY NO. 130); PLAINTIFF'S MOTION FOR ATTORNEY'S FEES(DOCKET ENTRY NO. 141) AND DEFENDANT'S MOTION FOR FEES ANDEXPENSES (DOCKET ENTRY NO. 142)
Pursuant to the provisions of § 46b-86 (a) of the General Statutes, the defendant has filed a motion for modification of the orders for unallocated alimony and support. This provision of the statutes permits the court to modify any final order for the periodic payment of permanent alimony or support upon a showing of a substantial change in the circumstances of either party.
The parties' marriage was dissolved on August 6, 1996. The agreement of the parties of even date was submitted to the court, approved and incorporated by reference in the decree. Paragraph 3.2 of the Agreement provides for the defendant to pay the plaintiff the monthly sum of $5,833.33 ($70,000 per year) by way of unallocated alimony and support. At the time of the decree the plaintiff was earning a gross weekly wage of $2,884.61 ($150,000 per year) and a net weekly wage of $1,315 after federal and state taxes, FICA and medicare and a deduction for a 401k contribution and a total net weekly income from all sources of $1,479 (see defendant's financial affidavit of August 1, 1996). At the time of the decree, the defendant knew that his employment would terminate on December 31, 1996, which fact was disclosed to the plaintiff. (See plaintiff's exhibit S, the transcript of the proceedings on August 6, 1996, page 7.[1] Also see the footnote on the bottom of page 1 of the defendant's financial affidavit.)
On December 4, 1996, the defendant filed a motion for modification of the order of alimony and support alleging a substantial change in his circumstances. The decree does not preclude modification.
By reason of the defendant's present unemployment, the court finds there has been a substantial change in his circumstances. At the time of the original decree, the defendant reported all other income of $164.00 net per week, $705.00 per month. On his current financial affidavit, he reports net monthly income of $1,417 after excluding unemployment compensation, which has terminated, and COBRA medical insurance of $416.00 per month.
It is the plaintiff's claim that the defendant has not made a real effort in finding work. The defendant has testified that he CT Page 8225 has mailed over 300 letters in response to advertisements in the Wall Street Journal, the New York Times and the Stamford Advocate, (two hundred and thirty-four (234) of those letters are in evidence, see plaintiff's exhibit T), that he engaged in networking, talked to four or five attorneys and accountants, interviewed with New York Road Runners Association, Hoffman Associates, and others, contacted four or five headhunter agencies; that he spends ten to fifteen hours per week trying to find a job; that finding a job providing for $100,000 annual salary or better at his age is extremely difficult; that most of the jobs in his area of expertise are for individuals with three to seven years experience and an annual salary of $40,000 to $80,000.
Based upon this testimony, the court finds that the defendant is actively seeking employment and following every lead called to his attention in searching for a job. The court also finds that to continue the present order for unallocated alimony and support would not be just and equitable.
Having reached this finding and having found a substantial change in the defendant's circumstances, the court must consider the indicia of § 46b-82 and § 46b-84 of the General Statutes in entering a new order for alimony and support. The court shall continue an order for unallocated alimony and support.
The following facts, important in considering the indicia of § 46b-82, are found. The defendant is 45 years of age. His health is good. He has a bachelor's degree in science from the University of Pennsylvania which he received in 1973 and an MBA degree from Harvard Business School which he received in 1975. Upon graduation from Harvard Business School, he worked for Citibank until 1982 and, thereafter, for Miller, Tabak, Hirsch 
Company in New York City from 1982 to 1996. His last position with Miller, Tabak, Hirsch Company was Executive Vice President. (See defendant's exhibit 3, the resume of the defendant.)
The plaintiff is 41 years of age. She graduated from Dartmouth College, Phi Beta Kappa, and attended Radcliff Publishing Procedures Course which was a six week course of study. She operates a sole proprietorship which is an advertising business from her home. Her only client is Razooks, an upscale ladies clothing store in Greenwich. She has conducted this CT Page 8226 business since 1980 or 1981. She does creative and media work for her client. Her gross receipts for 1995 were $78,500 and for 1996 were $94,673, including a payment received on December 31, 1996. Her annual net income for 1996 amounted to approximately $43,000 compared to a net income of $23,500 for 1995. She describes her health as fragile because "severe headaches plague her almost daily." She has medication for this condition which is the aftermath of an attack of virile encephalitis she had in her early 20's. She needs long periods of rest for this condition, and it does impact her ability to work.
The parties were married on June 29, 1980. There are two children, issue of the parties: Jenna age 13 and Ashley age 11. The children are active in dance and other usual school activities. They are at summer camp this summer for three weeks. The parties are working with therapists to try to improve the relationship between the children and the defendant which is strained at present.
At the time of the dissolution, the defendant paid to the plaintiff $602,045 in net cash funds by way of assignment of estate pursuant to § 46b-81 of the General Statutes. He also quit claimed all of his right, title and interest in the real property located at 26 Meadow Road in Riverside, Connecticut. As a result of such transfer, the plaintiff has liquid funds of $640,000. The defendant has liquid funds of at best $995,000. The plaintiff's total net assets without considering the alimony and child support arrearage amounts to $1,400,000 and the defendant's total net assets amount to $1,683,500.
The parties have bombarded the court with what would appear to be every bit of discovery information each received during all of the preliminary proceedings prior to this hearing. Plaintiff has gone to extremes in seeking production of the defendant's principal assets. In a game of tit for tat, the defendant has done likewise. Admittedly, the plaintiff would not have discovered the defendant's severance pay of $25,000, his consulting fees received in December, 1996, and the increase in his partnership interest in Reading II from $50,000 to $150,000, without such extensive discovery, but the court considers that much of the production sought was unnecessary on a motion for modification of alimony and support.
The defendant has made much of the excessive expenses set forth in the plaintiff's financial affidavit. The expense figures CT Page 8227 are, in reality, "dream" expenses rather than those actually
incurred at the present time. Plaintiff's real expenses are reflected in her check registers. (See plaintiff's exhibit Q). Practice Book § 464 requires that financial affidavits include current income, expenses, assets and liabilities. SeeWatson v. Watson, 20 Conn. App. 551 (1990). The plaintiff's listing of expenses in excess of those actually incurred (i.e. cleaning lady, no. 25 on page 6 of plaintiff's financial affidavit, in an amount of $700) makes the court's job on a modification extremely difficult.
The defendant received severance pay for each of the months of January, February and March of $5,000. He received unemployment compensation until July 13, 1997 of $1290 per month and a net of $811. The defendant is currently paying the plaintiff $1500 per month as unallocated alimony and support.
The plaintiff argues that this is an earning capacity case and that the original orders of the court should stand based upon the defendant's demonstrated earning capacity of $150,000 per year. The court does not agree. This might be considered an earning capacity case if the court were to find that the defendant is not searching for a new position with due diligence. However, the court has found otherwise. cf. Miller v. Miller,181 Conn. 610 (1980); Schmidt v. Schmidt, 180 Conn. 184 (1980).
The plaintiff's net monthly income at present is $1,417. At present the defendant is drawing upon principal assets in an amount of $5,000 to $7,500 per month. He is doing this while paying $1,500 per month to the plaintiff. It is clear to the court that this amount is insufficient for the plaintiff to continue to support the parties' two daughters. Expenses for food, clothing, children's activities and a proportionate amount for shelter exceeds this amount. Any amount that the defendant pays by way of unallocated alimony and support necessarily will have to come from principal assets. Such an award in particular circumstances is within the sound discretion of the court.Graham v. Graham, 25 Conn. App. 41 (1991).
Having considered all of the factors of § 46b-82 and § 46b-84 of the General Statutes, the court orders the previous orders of the court modified effective January 1, 1997, from $5,833.33 per month to $2,125 per month. The court finds an arrearage, therefore, for the months of January, February, and March of $375.00 and arrearage for the months of April through CT Page 8228 July of $2,500 for a total arrearage of $2,875. The court orders that this sum shall be paid to the plaintiff by the defendant within thirty (30) days of this date.
Defendant shall inform plaintiff's attorney of any full time or part time employment within forty-eight (48) hours of obtaining the same. He shall also advise the gross amount of wages or salary and itemized deductions for such employment. The defendant shall report his progress in obtaining employment on October 30, 1997, unless he has obtained employment. This matter has been placed upon the undersigned's calendar for that date.
PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
Plaintiff's counsel has provided an affidavit of fees and seeks $20,000 by way of attorney's fees. Attorney Jill Ford appeared and testified that the attorney's fees of $175.00 per hour was more than fair and reasonable.
The court has considered the provisions of § 46b-62 and the criteria of § 46b-82 of the General Statutes, together with the financial affidavits of both of the parties. The plaintiff has ample liquid funds of her own with which to pay her own counsel fees and should be allowed to do so. The plaintiff's motion is denied.
DEFENDANT'S MOTION FOR FEES AND EXPENSES
The defendant has testified that he has spent 355 hours of his time in representing himself in connection with his motion for modification and the other motions generated by his original motion. He values his time at $75.00 per hour based upon the income he earned as Executive Vice President at Miller, Tabak, Hirsch Company for a total, therefore, of $26,625. His out of pocket expenses he claims total $1,000.
Generally, attorney's fees and out of pocket expenses may not be recovered absent contractual or statutory authorization. In a family matter, attorney's fees in a situation like this case may be recovered pursuant to the provisions of § 46b-62 of the General Statutes. That provision of the statutes provides for attorney's fees to be paid by the opposite party but does not provide for fees for a pro se party. The court knows of no authority that would permit a pro se party to recover for his or her time expended in a court proceeding. The court could, under CT Page 8229 its general equitable powers, allow recovery for out of pocket expenses in a particular case. However, the defendant in this instance has ample liquid funds to be in a position to pay these expenses. The defendant's motion is denied.
Orders shall enter on these motions as herein noted.
EDGAR W. BASSICK, III, JUDGE