[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on May 25, 1988 at Canyon Lake, California. Immediately thereafter, the plaintiff resumed living in Westport, Connecticut joined by the defendant and a child Chad born of their union prior to this marriage. Chad is now 19 years of age and in his second year at Marquette University. There are no issue of this marriage.
The marriage of the parties has broken down irretrievably. The plaintiff resides in a rented apartment in Stamford. The defendant resides in a rented house in Westport.
The parties first met in 1971. On May 11, 1979, Chad was born, and at that time, the defendant was living in California. The parties commenced living together in 1981 and purchased a home in Westport on March 31, 1981. The parties then separated in 1982 or 1983, sold the house they had purchased and divided the CT Page 11730 proceeds.
The plaintiff was married in 1963 for the first time and divorced in 1971. He married again in 1983 and divorced in 1985. He married again in 1985 and divorced in 1987. In 1984 he purchased property in Westport at 41 Otter Trail. In 1988 the parties resumed living together and resided in the plaintiff's house on Otter Trail in Westport. This property was sold in 1994, and the proceeds used to purchase property on Sasco Hill Road in Fairfield which was sold in May, 1997. The proceeds from that sale were divided equally between the parties, each receiving $283,900. Since the closing was five days before the change in the tax law, each will be responsible for $50,000 in capital gains tax. In addition, the plaintiff has had to pay his first wife back alimony in the amount of $76,000, thus reducing his portion of the proceeds of sale to $203,000. In the future, he must pay his first wife twenty-five (25%) percent of his earnings and until adjusted next year must pay $2800 per month (based upon 1996 earnings).
The plaintiff is 58 years of age and in good health. He is employed by North Castle Partners of Stamford in the advertising field as arts director. On July 1, 1997, he entered into an employment agreement providing for a salary of $130,000 per year as arts director until his termination on December 31, 1998, and thereafter as a consultant at $35,000 per year for six years. The employment contract contains a noncompetition clause for the period that he receives his consulting fee of $35,000; that is, for the six year period to December 31, 2004. His health is good.
The defendant has been employed for 31 years by TWA as an airline flight attendant. While she has in the past earned $30,000 per year as a full time flight attendant, she has, for the past two years, worked only part time. As a senior flight attendant, she can pick and choose her flights. In the past, she has chosen flights to Europe, leaving Tuesday evening, staying over Wednesday and flying back Thursday, which was counted as full time. Her reason for working only part time is her health. She complains of shoulder and neck and back problems. She has testified that pushing the food carts and passing the trays to outside seats causes extreme pain. She is treating with a chiropractor and an orthopod; participates in physical therapy, message and water aerobics, all of which have helped. The defendant produced no medical testimony in support of her claims. Her testimony, however, was entirely credible. CT Page 11731
The defendant is, therefore, pursuing another vocation and studying to become a landscape designer. She is engaged in a three year program at the New York Botanical Gardens. She has just finished a five week intensive course which counts as one year of study. There was no evidence whether the remaining two years may also be covered in short intensive study.
The defendant is 52 years of age. While the plaintiff argues that defendant has an earning capacity of $30,000 as a full time senior flight attendant, in reality her gross annual salary is $17,500. She has a money market account of $223,059 and a Galaxy money market account for $52,007 (the proceeds of sale from the Sasco Hill Road property) and a securities account valued at $142,807. These three accounts total $417,873. While $50,000 of the proceeds of sale of the Sasco Hill Road property will have to be paid to the Internal Revenue Service for capital gains tax, the balance of these funds ($367,873) should produce approximately $19,000 in gross interest or dividend income.
Plaintiff in his trial memorandum has submitted a tax analysis. Unfortunately, plaintiff's counsel failed to consider each party's additional income by way of interest or dividend income. His tax analysis also includes a figure slightly less than the court is inclined to order by way of alimony. As the court has computed after tax income for each of the parties, the plaintiff would be left with approximately $42,330 and the defendant with approximately $37,000 or a split of 53.3% — 46.6% of the total after tax income of both parties.
It should be noted that the defendant's rent for one year has been paid in advance, $1200 of which has been prepaid by the plaintiff with money he received by way of inheritance from his aunt — $75,000. The $19,000 shown on the defendant's financial affidavit was in a joint account, but drawn out by the plaintiff since it was all his funds. The tax refund shown on defendant's financial affidavit has been deposited. Her assets total $397,578 not including any valuation for her TWA pension which, if she retired today, would pay $450.00 per month. So long as she continues to work, her monthly pension payment will increase over the next 12 years. This figure also excludes the $50,000 capital gains tax that she will owe for 1997.
The plaintiff's assets consist of a checking account with $4,000, a short term bond fund with Scudder Trust Company in the CT Page 11732 amount of $3,218, an IRA account in the amount of $14,692, a Volkswagen Bug valued at $8,000, a sail boat valued at $1,000, Strong Fund Money Market of $263,000 less $50,000 in capital gains tax that he, too, will have to pay for 1997 plus a 401 (k) plan with North Castle Partners valued at $559,000 which after tax results in a net figure of $335,400 for total assets of $509,310.
At the time of the parties' marriage, the plaintiff had $139,000 in his pension plan. In the one year period from June 30, 1988 to July 1, 1989, there were contributions to the plan of $24,000 and a growth of $44,000. In an eight year period, applying an interest factor of but six percent (6%), his plan by growth alone would approximate $310,000 of the current balance of $559,000. With contributions approximating $250,000 over an eight year period, it is just and equitable that some portion of the plaintiff's 401 (k) plan be transferred to the defendant.
The alimony award to the defendant must take into account the plaintiff's income position as of December 31, 1998, based upon his employment contract. In view of that employment picture, this is a case for a "second look" in January, 1999 to determine a fair and equitable alimony amount to be paid to the defendant by the plaintiff.
In determining the proper orders in this case, the court must consider the factors set forth in § 46b-81 and § 46b-82
of the General Statutes together with the provisions of §46b-62 dealing with attorney's fees. With respect to alimony and a division of property, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, CT Page 11733 (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
Considering the length of the marriage and the defendant's employability, this is not a case for life time alimony. The defendant has employment, has income from invested assets and will, upon retirement, have a monthly pension.
On the issue of division of property, in the case of Blake v.Blake, 207 Conn. 217 at 230 (1988), our Supreme Court cited with approval the language of O'Neill v. O'Neill, 13 Conn. App. 300 at 311 (1988), in which our Appellate Court stated as follows:
 A property division ought to accord value to those nonmonetary contributions of one spouse which enable the other spouse to devote substantial effort to paid employment which, in turn, enables the family to acquire tangible marital assets. The investment of human capital in homemaking has worth and should be evaluated in a property division incident to a dissolution of marriage. We hold, accordingly, that an equitable distribution of property should take into consideration the plaintiff's [defendant's] contributions to the marriage, including homemaking activities and primary caretaking responsibilities. See also Watson v. Watson, 221 Conn. 698, 712 (1992).
Further on the issue of division of property, the Appellate Court in the recent case of Siracusa v. Siracusa,30 Conn. App. 560 (1996), sets forth the statutory criteria as follows:
 General Statutes § 46b-81 (c) sets forth numerous factors that a trial court must consider in assigning the property of the parties whose marriage is to be dissolved by the court. That section mandates that the court consider not only CT Page 11734 the contribution of each party toward acquisition of the property, but the length of the marriage, the cause of the dissolution and `the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income.' General Statutes § 46b-81 (c). The court must consider all of the statutory criteria in determining how to divide the parties' property in a dissolution action. Leo v. Leo, 197 Conn. 1, 5, 495 A.2d 704 (1985). `A trial court, however, need not give each factor equal weight; Kane v. Parry, [24 Conn. App. 307, 313-14, 588 A.2d 227 (1991)]; or recite the statutory criteria that it considered in making its decision or make express findings as to each statutory factor.' Savage v. Savage, 25 Conn. App. 693, 701, 596 Again in Siracusa, the court on page 570 states as follows:
 `The trial court is accorded wide discretion in determining the proper allocation of the assets of the parties.' Graham v. Graham, 25 Conn. App. 41, 47, 592 A.2d 424 (1991). General Statutes § 46b-81 (a) expressly provides that at the time of entering a decree dissolving a marriage, the trial court may assign to either party all or any part of the estate of the other. The court is empowered to pass title or order the sale of real property `when in the judgment of the court it is the proper mode to carry the decree into effect.' Siracusa v. Siracusa, 30 Conn. App. 560, 570 (1996).
As already noted, the court has considered all of the statutory factors of § 46b-81 and § 46b-82 of the General Statutes together with all of the evidence, the parties' financial affidavits, the parties' claims for relief and all of the applicable case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v.Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. CT Page 11735
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. Each of the parties have contributed to the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of the parties' marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. The plaintiff shall pay to the defendant by way of alimony the sum of Two Thousand ($2,000) Dollars per month until the defendant's death or remarriage, the plaintiff's death or December 31, 1998, whichever first occurs. Thereafter, the plaintiff shall pay the defendant $1.00 per year alimony until his death, the defendant's death or remarriage or December 31, 2005, whichever first occurs, which shall be non-modifiable in duration. An immediate order for wage withholding to secure the order for alimony shall issue.
3. The plaintiff shall maintain life insurance in the amount of $150,000 for the benefit of the defendant naming the defendant as first irrevocable beneficiary thereof until December 31, 1998 at which time the amount may be decreased to $100,000 for as long as he is obligated to pay alimony.
4. The defendant shall retain the following assets listed on her financial affidavit:
a. Fleet Money Market account;
b. her certificate of deposit; CT Page 11736
c. her checking account;
d. her 1991 Mitsubishi Montero;
e. her securities account;
f. her Galaxy Money Market account;
g. her 401 (k) retirement plan;
h. her TWA pension plan;
i. her John Hancock Life insurance policy;
j. her employee life insurance;
k. her jewelry and silver;
l. her home furnishings.
5. The plaintiff shall retain the following assets:
a. his Strong Fund Money Market account;
 b. his North Castle 401 (k) account less that to be paid over to the defendant;
c. his 1991 Ford Explorer;
d. his sail boat;
e. his checking account;
f. his short term bond fund with Scudder Trust Co.;
g. his IRA account;
h. his Volkswagen Bug automobile;
i. his furnishings;
j. his New England Life insurance policy.
6. Each party shall pay the liabilities listed on his CT Page 11737 or her financial affidavit and shall indemnify and hold harmless the other party from any claim or demand thereon.
7. The plaintiff shall assign and transfer to the defendant the sum of $90,000 from his 401 (k) account to an IRA account to be established by the defendant. Such tax consequences as occur on the subsequent withdrawal from the IRA account by the defendant shall be wholly her responsibility.
8. The plaintiff shall be responsible for any tax liability for any joint tax returns filed during the course of the marriage and shall hold the defendant harmless and indemnify her with regard to his earnings. The defendant shall be responsible for any tax liability for any joint tax returns filed during the course of the marriage and shall hold the plaintiff harmless and indemnify him from any tax liability arising out of her earnings.
9. The plaintiff shall return to the defendant several photos in his possession which he has agreed to return to her.
10. To the extent that the foregoing does not include any individual savings or checking accounts of either of the parties, such accounts shall be the property of the owner thereof free of any claim or demand by the other party.
11. Each party shall pay his or her own attorney's fees.
Judgment shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE