[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION TO MODIFY UNALLOCATED ALIMONY AND CHILD SUPPORT
The plaintiff has filed a motion for modification dated August 25, 1998, in which she alleges that an upward modification of the present orders of the court ($2,125 monthly/$25,000 per year) is warranted due to the defendant's earning capacity, his substantial assets and the fact that the plaintiff is paying all of the expenses for the minor children since he is not seeing the children. It is the plaintiff's claim that the defendant is not gainfully employed by choice and that he is not aggressively looking for employment since, if he were, there are jobs available to him as a financial manager.
A decree of dissolution of marriage was entered on August 6, 1996. At that times the parties executed a separation agreement which was incorporated in the judgment and which provided that the defendant pay to the plaintiff unallocated alimony and child support in the amount of $5,833.37 ($70,000) per year plus twenty (20%) percent of his bonus. The agreement was based upon the defendant's earning a gross annual employment income of $140,000. At that time, the defendant had received notice of termination of his employment with Miller, Tabak, Hirsch Company as of June, 1996, but was "technically" employed through December 31, 1996. (See footnote page 1 of defendant's financial affidavit of August 1, 1996.)
On August 5, 1997, the undersigned ruled defendant's motion for modification dated December 4, 1996. The court found that by reason of the defendant's unemployment there had been a substantial change in his circumstances. It was the plaintiff's claim then that the defendant had not made a real effort in finding work. The court, however, found that the defendant was actively seeking employment and "following every lead called to his attention in searching for a job." The court modified the order, reducing the unallocated alimony and child support order to $2,125 per month.
On November 7, 1997, the plaintiff filed a motion for modification of alimony and support. That motion was heard by CT Page 12021 Judge Petroni, and his Memorandum of Decision dated January 26, 1998, is contained in the file. Judge Petroni denied the plaintiff's motion, finding that the plaintiff failed to meet her burden of proof that a substantial change in the defendant's financial circumstances had occurred. The plaintiff again claimed the defendant was not making a real effort to find full time employment.
Based on the defendant's testimony, the court found he had sent out about two hundred letters seeking employment since July, 1997, and was interviewed on five occasions but had been unsuccessful in his attempts to find employment. The court found that the defendant was actively seeking full time employment. It should be noted, however, that the defendant did have a consulting position during this period for three and one half months that paid him $5,000 per month.
The relevant facts regarding the parties are amply set forth in the undersigned's previous memorandum. It should be noted that the plaintiff is a graduate of Dartmouth College, Phi Beta Kappa, and attended Radcliff Publishing Procedures Course which was a six week course of study. She is still engaged in creative and media work for Razooks in Greenwich. Since Razooks has given notice that it will soon terminate her services, she has worked earnestly to take on new clients as a free lance writer in advertising, promotional work and now catalogue writing. She is 42 years of age and raising two children ages 14 and 12.
The defendant is 46 years of age. His health is good. He has a bachelor's degree in science and an MBA from Harvard Business School. He worked for Citibank from 1975 to 1982 and for Miller, Tabak, Hirsch Company from 1982 to 1996. In addition to the consulting work referred to above, he did work from February 1998 to July on a project that involved the building of modular homes in Puerto Rico. This was a new venture which he hoped might materialize into a permanent position. The project failed for lack of investors. He was to be paid only if the project was successful. He testified he had sent three hundred and ten letters, had communicated with the Business School Alumni office, contacted friends, and had five interviews since January 1 and had spent fifteen to twenty hours per week looking for a job. On October 1, he moved permanently to a mortgage-free home he had purchased in Wilton Manor, Florida, a suburb of Ft. Lauderdale. CT Page 12022
As previously noted in the court's prior Memorandum of Decision, the plaintiff suffers from migraine headaches, experiencing headaches of varying intensity on a daily basis. These headaches have gotten worse over the last year and she is seeing a neurologist on a regular basis. There are side effects to the medication she is taking: dizziness, nausea, lack of concentration, fatigue, heart palpitations and breathlessness. She also has a rotator cuff injury suffered ten years ago, which will "freeze" for lack of exercise. She swims regularly at 5:30 each morning which helps the headaches and keeps the rotator cuff mobile. She gets back home at 6:55 in time to get the younger daughter, Ashley, age 12, off to school. The older child Jenna gets the bus at 6:45 a.m. on her own. Ashley suffers from juvenile rheumatoid arthritis (J.R.A). Her knee is swollen and she is on an anti-inflammatory medication. She requires medical attention every three to six months. The J.R.A. impacts her ability to play sports. She must be kept as active as possible and she has physical therapy at home. Daughter Jenna has a learning disability and needs special education. She is in the ninth grade at Greenwich High School where the plaintiff's mother teaches. Jenna is an extremely bright child but requires tutorial help.
The plaintiff works out of her home. Because of the serious impact of the reduction in alimony and support from $5,833 per month to $2,125, she has had to cut her expenses dramatically. Her monthly expenses as listed in her financial affidavit of July, 1997, totaled close to $16,000. Her expenses as reflected in her current affidavit total $12,000. She shows a monthly shortfall of $5,500. In 1996, she had gross receipts of $89,000 and net income of $50,500. Her estimated gross receipts for this year are $125,900 with estimated business expenses of $56,600 for a net business income of $69,300. It is because of this increase of net income of $18,800 that the defendant has moved for modification of the current order of alimony and support of $25,000 per year.
It is clear that the plaintiff is unable to continue living in Riverside on the current household income. She has testified that it is important that the children continue living in the family home and attend the Greenwich school system. However, she has been spending principal funds and her liquid assets have been diminished by roughly $30,000. It was her claim that her assets have been depleted by $150,000. CT Page 12023
The plaintiff has a male companion living with her. He is unemployed and is unable to contribute to the household expenses. The defendant sought to orally change his motion for modification to one seeking modification under the provisions of § 46b-86(b). However, there is no evidence that there has been any change in the plaintiff's financial circumstances by reason of the live-in male companion.
The plaintiff offered the testimony of Dr. Jeff R. Blank, a rehabilitation and vocational consultant. Dr. Blank has been a member of the adjunct faculty of Post College, Albertus Magnus College, Quinnipiac College, Southern Connecticut State College, Central Connecticut State College and the University of New Haven. He testified that in his opinion the defendant could have obtained employment in the period August, 1997 to today as a financial manager at an annual salary of $168,000 to $298,000 exclusive of bonus. He based his opinion upon the defendant's experience and work history as set forth in his resume' (plaintiff's exhibit B). His work history is also set forth in the letters in defendant's exhibit 1.
The question for this court to consider is whether or not there has been a substantial change of circumstance since this court's decision in August, 1997. The claim made by the plaintiff is that the defendant has not made his best effort to find employment in the two and one fourth years since he lost his position at Miller, Tabak, Hirsch Company. Based upon Dr. Blank's testimony, he could have found a position as a financial manager. Plaintiff claims that the defendant is more interested in exploring his new alternative life style rather than working. He has assets of $1,575,000, net of unrealized tax liabilities, a sufficient amount so that he does not need to find employment. However, the pursuit of a life without work results in punishment to a spouse to whom he was married for sixteen years and two young daughters.
An analysis of his letters (defendant's exhibit 1), reveals interesting information. Practically all of the letters are of two general forms, changed ever so slightly, and computer generated. Other than the defendant's testimony, there has been no evidence that these letters were actually sent. Except for two letters which were to leads allegedly supplied by the Harvard Business School, the rest of the letters are answering alleged ads. There were 267 days from January 1 to CT Page 12024 September 25. Exhibit 1 contains a total of 303 letters written during that period. Letters are dated on 147 of those days. Of the 147 days, there is one letter on 13 of those days; three letters on 15 of those days; and four letters on four of those days. On all the other days, there are only two letters. Of the 147 letters, there are letters written on five Fridays. There are only three weeks when letters were written Monday through Friday, which includes three of the Fridays mentioned above. There are five weeks of only three days when letters are prepared. Of the remaining thirty-eight weeks, there was one week when no letters were prepared (January 1 through 12) and twenty-nine weeks of letters written only Monday through Thursday. The letters themselves clearly demonstrate lack of an earnest effort to find employment.
When the plaintiff called the defendant to discuss her need for additional alimony and support, the defendant responded by stating: "A job was not a high priority." He stated further, "The girls will adjust" and "You should go back home and live with your parents." On the witness stand, the defendant said: "Fifty thousand dollars would not change our circumstances." In other words, a job at an annual salary of $50,000 would not impact the family's financial situation.
The court finds that the defendant is no longer trying to obtain employment. The fact that he has now moved to Florida and will no longer be in a position to visit with his daughters and share some of the expenses is a substantial change of circumstances by itself. The court finds there has been a substantial change of circumstances in that the defendant is no longer searching for employment with due diligence.
Having so concluded, the court must again consider the factors or indicia of § 46b-82 of the General Statutes. The factors to be considered in this case have been set forth in this Memorandum of Decision. The question remaining is the amount of alimony and support that should be ordered.
The plaintiff seeks the reinstatement of the original order entered in August, 1996. That figure was based upon the defendant's earning a gross annual employment income of $140,000 (see paragraph 3.3 of the Separation Agreement dated August 6, 1996). Certainly, the defendant has the intelligence, skills, education and experience to resume a like career. It is appropriate that the court consider the defendant's earning CT Page 12025 capacity in determining a proper alimony and support award.Miller v. Miller, 181 Conn. 610 (1980); Hart v. Hart,19 Conn. App. 91 (1989). It is particularly appropriate in this case to base the financial award on the defendant's previous earnings at Miller, Tabak, Hirsch Company. See Venuti v. Venuti,185 Conn. 156 91981); see also McKay v. McKay, 174 Conn. 1, 2 (1977).
Any amount that the defendant pays by way of alimony and support before he obtains employment necessarily will have to come from principal. Such an award in particular circumstances is within the sound discretion of this court. Graham v. Graham,25 Conn. App. 41 (1991).
Having considered all of the factors of § 46b-82, § 46b-84 and § 46b-215b of the General Statutes, the court orders the original orders for alimony and support reinstated effective with the first payment on November 1, 1998, in advance.
The court has considered and commented upon the allegations of the defendant's motion for modification. The plaintiff's increase in net earned income since August of 1996 represents a substantial change of circumstance; but does not warrant modification of the original orders for unallocated alimony and support after considering the factors of § 46b-82
of the General Statutes.
The plaintiff has moved for counsel fees pursuant to § 46b-62 of the General Statutes. In considering this motion, the court must also consider the factors of § 46b-82
of the General Statutes. Plaintiff has incurred counsel fees of close to $8,000 to September 28, 1998. To this must be added plaintiff's counsel's time on September 30 and October 1, which would add at least another $4,000. While it is true that the plaintiff has liquid funds with which to pay counsel, so also does the defendant. The defendant has chosen not to hire counsel for himself although he could well afford to do so. Since he chose not to hire counsel, he argues that he should not have to pay plaintiff's counsel if she chose to hire counsel. He forgets, however, that it is his refusal to obtain employment that necessitated the plaintiff's seeking this modification. It is only fair and equitable that he bear a part of plaintiff's counsel's expense.
The court orders that the defendant shall pay to plaintiff CT Page 12026 the sum of Six Thousand Five Hundred ($6,500) Dollars as a contribution toward plaintiff's counsel fees on or before November 1, 1998.
EDGAR W. BASSICK, III JUDGE TRIAL REFEREE