[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action for dissolution of marriage and other relief brought to the Judicial District of Danbury. The judgment of dissolution of marriage was entered on December 30, 1998.
Many of the facts that give rise to this action are not in dispute. The plaintiff and the defendant, whose maiden name was Patricia Kane, intermarried at Auburn, New York on April 27, 1957. The plaintiff has resided continuously in the State of Connecticut for at least twelve months immediately preceding the date the complaint was filed. The marriage between the parties has broken down irretrievably without any reasonable prospects of reconciliation. There are five children, issue of the marriage, all of whom are adults. No other minor children have been born to the defendant wife since the date of the marriage of the parties, and neither party has received state assistance.
Neither party is the cause for the breakdown of the marriage. The defendant who is sixty-two and the plaintiff who is sixty-three had a marriage that became a tragedy. The parties have five children all of whom are in their majority. In 1971, the defendant experienced serious psychiatric difficulties and was hospitalized in Allentown, Pennsylvania. Since that date, she had at least nine hospitalizations for the psychiatric difficulties, her most recent being at Danbury Hospital in October of this year when it was required that she be medicated on an involuntary basis. The medical records, all of which have been made exhibits in this case, are replete with hospitalizations and diagnoses. She has an acute bipolar one disorder with psychosis that is chronic. She is obviously unable to work and has a great deal of difficulty providing for herself CT Page 879 particularly when she is delusional. When she has used her medication, her condition has stabilized, but she repeatedly resists the use of medication. She is also a severe alcohol abuser that seriously impairs her daily function. Her refusal to self-medicate, which is a symptom of her illness, has resulted in conduct that has required the plaintiff to obtain a restraining order. She started a fire in the parties' home in June of 1997, and was subsequently ordered by the Court to leave the home. Extensive damage was done at the time of the fire. She has threatened to castrate the plaintiff. She presently resides by herself in a small condominium unit in Bethel, Connecticut. The plaintiff, age sixty-three, has been an executive with a large Fairfield County based corporation and has been its Human Resources Vice-President since August, 1986. He is in good health and contemplates retirement in the next two years. He has been an extremely hard worker and has been successful financially. He has had an extremely difficult home life to say the least. Because of defendant's serious psychiatric condition, he is reluctant to share with her his sizeable estate, but at the same time is aware of his legal obligation and responsibilities. He is naturally concerned about her potential manic episodes that might allow her to make unwarranted expenditures and seriously dissipate her assets. This matter will be addressed in the orders of the Court. In determining the assignment of marital property under § 46b-81, as well as alimony under § 46b-82, the Court has considered the standard of living of the parties and has weighed it in light of all of the other statutory criteria.Graham v. Graham, 25 Conn. App. 41, cert. denied, 220 Conn. 903;Blake v. Blake, 207 Conn. 217, 232. Of great significance is the mental health of the defendant. Based on the testimony presented, the defendant's psychiatric condition is irreversible. Even if she adhered to medication, her ability to function would be severely limited.
 ORDERS
A. ALIMONY
The plaintiff shall pay to defendant as alimony the sum of $900 per week until the first of the following occurs: (a) the defendant or the plaintiff shall die; (b) the defendant remarries; (c) the defendant regularly cohabits to the extent that such cohabitation would justify a termination of the alimony pursuant to Connecticut General Statutes; or (d) the plaintiff's retirement from employment at Dorr-Oliver, Inc. under CT Page 880 circumstances under which the defendant may commence to receive her share of the plaintiff's annuity pension with Dorr-Oliver, Inc. Alimony shall be non-modifiable by way of extension of term. There was evidence presented that the present living quarters are very small, so an upward adjustment from the temporary order of alimony is warranted.
B. ANNUITY PENSION
The value of the defendant's annuity pension with Dorr-Oliver, Inc., as of the date of dissolution of the marriage of the parties, shall be divided equally by a Qualified Domestic Relations Order.
C. 401K PLAN
That 40 percent of the value of the plaintiff's 401K plan established through his employer be awarded to the defendant as of the date of the dissolution of this marriage through a non-taxable, non-penalized rollover of such benefits.
D. HEALTH INSURANCE
That the plaintiff shall pay to the defendant such sum per month as is necessary to maintain her existing health and dental insurance coverage, or its equivalent, through COBRA, for the period of time until she reaches the age of sixty-five.
E. PERSONAL PROPERTY
1. Motor Vehicles. The plaintiff shall retain his 1996 Chrysler LH automobile. The defendant shall retain her 1993 Suzuki Sidekick automobile. The plaintiff shall transfer to the defendant the title to the 1983 Ford Mustang automobile.
2. Bank Accounts. The following bank accounts shall be divided based upon a 60 percent/40 percent plaintiff-to-defendant ratio:
V.S.P. Savings at Dorr-Oliver $ 155,302 BIC Credit Union $ 12,355 Merrill Lynch Ready Assets $ 17,648 CIGNA $ 21,711 Newtown Savings Bank CD $ 24,127 Newtown Savings Bank CD $ 81,728 CT Page 881 Merrill Lynch Individual Investor Acct. $ 25,300
3. Stocks, Bonds, Mutual Funds. The following stocks, bonds and/or mutual funds shall be divided based upon a 60 percent/40 percent plaintiff-to-defendant ratio:
 General Public Utilities $ 494 Fidelity Investments $ 12,507 General Electric $ 57,407
4. Life Insurance. The parties may retain their respective life insurance investments, if any, as reflected upon their financial affidavits.
5. Individual Retirement Accounts. The plaintiff shall compensate defendant for the value of his IRA's totaling $99,343 in the sum of $44,000.
Plaintiff shall retain all right, title and interest in and to all his IRA's as listed on his financial affidavit.
Defendant shall retain all right, title and interest in and to such IRA's as appear on her financial affidavit.
6. Household Furniture and Furnishings. The parties shall divide equally the contents of the house located at 3 Pound Sweet Hill, Bethel, Connecticut. The property, which remains the subject of a dispute between the parties, shall be auctioned and the proceeds divided equally. The defendant shall retain all her jewelry and possessions now maintained by her in her apartment at Grassy Plain Street, Bethel, Connecticut.
F. REAL PROPERTY
The defendant is awarded the residence located at 3 Pond Sweet Hill, Bethel, Connecticut, with a stated value of $250,000. The defendant shall pay to the plaintiff, as and for his share of the value of such property, the sum of $125,000.
G. INSURANCE CHECK
The proceeds of the $4000 insurance check that plaintiff is holding shall be divided equally among the parties.
H. FEES AND COSTS CT Page 882
The plaintiff shall pay to the defendant the sum of $17,500 toward the payment of attorney fees. An allowance for fees and costs of Michelle Murphy, Conservatrix for the defendant, is made in the sum of $22,000. This sum shall be borne equally by the parties.
I. TRUSTEE
Michelle Murphy of Newtown is hereby designated as Trustee for the defendant. She shall immediately apply to the Probate Court for the District of Bethel and make application to have an involuntary Conservator appointed. It is suggested that with her background and experience with the defendant that she be appointed. Other than the alimony payment, she is to make no expenditure until the appointment of a Conservator. If for some reason the Probate Court is unwilling to make the appointment on a non-voluntary basis, the Trustee is ordered to report back to this Court so that it may fashion orders that will protect defendant's assets. If at any time the Probate Court terminates an involuntary conservatorship, all payments, with the exception of alimony, are suspended until further order of this Court. This Court shall maintain continuing jurisdiction in this matter.
Owens, J.