[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION FOR MODIFICATION OF ALIMONY AND SUPPORT (MOTION NO. 132)
The court has for decision in this matter the defendant's Motion for Modification of Alimony and Support. A previous motion for modification (docket entry no. 125) was heard by Judge Hiller and an order entered on May 9, 2002. Prior to Judge Hiller's decision on May 9, he had temporarily reduced the alimony and support figures from $653 per week to $500 per week, that reduction being without prejudice. On May 9, Judge Hiller restored the original order of $353 for support and $300 for alimony. In doing so, he stated as follows:
The court will find that the original reduction to 500 dollars per week was without prejudice. The court will find that the defendant now is earning more than he was at the time, since he has received job — a job and he's got a job at which he will be making 45,000 dollars a year. The court will find that he has found other potential jobs for more earnings. The court will find that the difficulties he's having with earning the amount of money that he had before are of his own making. And that he is voluntarily contributing towards his impairment of earning capacity and his ability to earn more by his failure to undergo treatment and to take steps to alleviate the problem that he is having and the court will restore the weekly order to 653 dollars per week, commencing this week.
Since that time, the defendant no longer has the job at $45,000 per year referred to by Judge Hiller.
The question here is whether or not there has been a substantial change in the circumstances of the parties since Judge Hiller's order. Judge Hiller found that the defendant's "difficulties" were of his own making and that he voluntarily contributed to his impairment of earning capacity. Further, the reason he no longer has the job at $45,000 per year is because he voluntarily terminated. Granted, he quit in order to serve a thirty day jail sentence for driving while his operator's license CT Page 4039 was under suspension.
The defendant is an admitted alcoholic. He has been in numerous treatment programs, no one of which has been successful. He has now to enter a court-ordered inpatient treatment program lasting three weeks.
At the time of the dissolution in June 2001, the defendant was employed as a computer systems director at Reuters Corporation in New York City earning $115,000 per year. Prior to his employment with Reuters, he was employed with Dun Bradstreet Corporation where he had been employed for sixteen years. This job terminated because of down sizing. His job at Reuters terminated also because of down sizing and the defendant received severance pay until July 21, 2001. Thereafter, the defendant remained unemployed until 2002 when he obtained a job at Foxwoods Casino for a period of three months. He has a Bachelor of Arts Degree in mathematics and a Masters Degree in Business Administration. There is no question that the defendant has an earning capacity considering his vocational skills, employability, age and health.
While the defendant has admitted his alcoholism, he was never terminated because of his drinking, never denied employment because of his drinking, and never received any such complaint from any employer. The court finds he has made every effort to obtain employment. Unfortunately, his age (50) and the times are very much against him. In the year and nine months since the divorce, he has borrowed against his Prudential Securities Account in the amount of $69,600 and increased his credit card liability and bank credit lines by $6,200.
The difference in the defendant's financial situation now is that the court finds that the defendant has actively pursued employment. He has registered with six different recruiters and has placed his resume on-line on three different web sites CareerJournal.com, HotJobs.com, and Monster.com. He has done and is doing job searches every day (see defendant's exhibits 5-10).
The plaintiff is employed as a secretary at Nursing Home Care, Inc. She earns $383 net per week. At the time of the decree of dissolution, she chose to receive the defendant's interest in the family home. While the assets of the parties were divided 50-50, the wife's share was comprised principally of the house. (See Agreement dated June 19, 2001, page 7.) She has very limited liquid funds. There are two children issue of the marriage: Brittany age 13 and Gabriella age 8.
The court has considered all of the factors of § 46b-82 of the General Statutes together with the factors of § 46b-84 of the General CT Page 4040 Statutes in making its determination in this matter. The court finds a substantial change of circumstances since Judge Hiller's decision of May 9, 2002. The court has the duty to craft its orders so that those economically at risk are given protection. Sweet v. Sweet, 190 Conn. 657
(1983); Cabrera v. Cabrera, 23 Conn. App. 330 (1990). The plaintiff and the children are economically at risk. The court reduces the alimony order from $300 per week to $1.00 per year. Support shall remain as previously entered in the amount of $353 per week. The defendant is to advise his attorney immediately of any change in his employment situation. If he should have no attorney at the time, he shall notify plaintiff's attorney immediately. Any subsequent change in the alimony order shall be retroactive to the defendant's date of employment.
The court recognizes that the defendant will have to continue to invade principal assets to pay the support order. See Graham v. Graham,25 Conn. App. 41, cert. denied, 220 Conn. 903 (1991). The plaintiff and the children must be given protection as noted above.
 EDGAR W. BASSICK, III JUDGE TRIAL REFEREE
CT Page 4041